**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

OTG MANAGEMENT PHL LLC;

OTG MANAGEMENT PHL B, LLC;

LAGUARDIA USA LLC;

LGA AIRPORT RESTAURANTS, L.P.;

OTG DCA VENTURE II LLC;

OTG JFK T2 VENTURE, LLC;

OTG JFK T5 VENTURE, LLC;

OTG MANAGEMENT T8 LLC;

OTG MANAGEMENT JFK LLC;

OTG MANAGEMENT EWR LLC;

OTG MANAGEMENT IAH, LLC;

OTG MANAGEMENT MIDWEST LLC;

OTG MANAGEMENT YYZ, LLC;

OTG MCO VENTURE II LLC;

OTG ORD VENTURE LLC;

OTG EXPERIENCE, LLC;

OTG CONCEPTS FRANCHISING, LLC; AND

OTG MANAGEMENT LLC,

Plaintiffs,

v.

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

Defendant.

Civil Action No.: 2:21-cv-01240-WJM-MF

**Return Date: June 7, 2021**

---

**DEFENDANT EMPLOYERS INSURANCE COMPANY OF WAUSAU'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT ITS MOTION TO DISMISS**

---

**FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**
67 East Park Place, Suite 901
Morristown, New Jersey 07960
(973) 343-4960
*Attorneys for Defendant Employers Insurance Company of Wausau*

On the Brief:

Christopher S. Finazzo, Esq.
Rachel R. Hager, Esq.
William J. Cro, Esq.

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........ iv

PRELIMINARY STATEMENT ........ 1

A. PLAINTIFFS HAVE FAILED TO ESTABLISH PHYSICAL LOSS OR DAMAGE AS REQUIRED BY THE POLICY. ........ 2

1. OTG WRONGLY INTERPRETS THE POLICY TO COVER "LOSS OF USE". ........ 4

2. UNDER CONTROLLING NEW YORK LAW, THE PHRASE "DIRECT PHYSICAL LOSS OR DAMAGE" REQUIRES PHYSICAL ALTERATION TO PLAINTIFFS' PROPERTY. ........ 5

B. THE CONTAMINATION EXCLUSION CLEARLY APPLIES PURSUANT TO THE PLAIN LANGUAGE OF THE POLICY. ........ 9

CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*6593 Weighlock Drive, LLC v. Springhill SMC Corp.*,
2021 WL 1419049 (N.Y. Sup. Ct. Onondaga Cty. Apr. 13, 2021) ..........9

*10012 Holdings, Inc. v. Hartford Fire Insurance Co.*,
2020 WL 7360252 (S.D.N.Y. Dec. 16, 2020) ..........5

*Arash Emami, M.D., P.C. v. CNA and Transportation Ins. Co.*,
2021 WL 1137997 (D.N.J. Mar. 11, 2021)..........7

*Ascent Hospitality Management Co., LLC v. Employers Ins. Co. of Wausau*,
2021 WL 1791490 (N.D. Ala. May 5, 2021)..........10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........2

*Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*,
2021 WL 2206077 (D.N.J. May 28, 2021)..........12

*Deer Mountain Inn LLC v. Union Ins. Co.*,
2021 WL 2076218 (N.D.N.Y. May 24, 2021)..........4, 8, 9

*Equity Planning Corp. v. Westfield Ins. Co.*,
2021 WL 766802 (N.D. Ohio Feb. 26, 2021)..........5

*Food for Thought Corp. v. Sentinel Ins. Co., Ltd.*,
2021 WL 860345 (S.D.N.Y. Mar. 6, 2021) ..........*passim*

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
2014 WL 6675934 (D.N.J. Nov. 25, 2014) ..........6

*Hair Perfect Int'l, Inc. v. Sentinel Ins. Co.*
No. 2:20-cv-03729-JAK-KS (C.D. Cal. May 20, 2021)..........5

*Henderson Road Restaurant Systems, Inc. v. Zurich American Ins. Co.*,
2021 WL 168422 (N.D. Ohio Jan. 21, 2021)..........5

*Hughes v. Potomac Ins. Co. of D.C.*,
199 Cal App. 2d 239 (1962) ..........5

*In re: Society Ins. Co. COVID-19 Business Interruption Protection Ins. Litigation*,
2021 WL 679109 (N.D. Ill. Feb. 22, 2021) ..........8

*Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*,
2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021)....................4, 7

*Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*,
2021 WL 1600831 (W.D.N.Y. Apr. 23, 2021)....................3, 7

*Kingray Inc. v. Farmers Grp. Inc.*,
2021 WL 837622 (C.D. Cal. Mar. 4, 2021)....................5

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011)....................2

*Manhattan Partners, LLC v. Amer. Guar. & Liab. Ins. Co.*,
2021 WL 1016113 (D.N.J. Mar. 17, 2021)....................7

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020)....................5

*Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*,
2021 WL 276655 (S.D.N.Y. Jan. 27, 2021)....................12

*Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*,
2021 WL 1419782 (N.D.N.Y. Apr. 14, 2021)....................4, 7

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*,
17 F. Supp. 3d 323 (S.D.N.Y. 2014)....................8

*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*.,
472 F.3d 33 (2d Cir. 2006)....................12

*Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*,
788 N.Y.S.2d 142 (App. Div. 2004)....................11

*Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*,
311 F.3d 226 (3d Cir. 2002)....................6

*Promotional Headware Int'l v. Cincinnati Ins. Co.*,
2020 WL 7078735 (D. Kan. Dec. 3, 2020)....................3

*Ralph Lauren Corp. v. Factory Mut. Ins. Co.*,
2021 WL 1904739 (D.N.J. May 12, 2021)....................7, 10

*Roundabout Theater Company, Inc. v. Cont'l Cas. Co.*,
302 A.D.2d 1 (1st Dep't 2002)....................8

*Roy H. Johnson, DDS v. The Hartford Fin. Servs. Grp.*,
2021 WL 37573 (N.D. Ga. Jan. 4, 2021)..........3

*Rye Ridge Corp. v Cincinnati Ins. Co.*,
2021 WL 1600475 (S.D.N.Y. Apr. 23, 2021)..........9

*Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*,
2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021)..........*passim*

*Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*,
2005 WL 600021 (N.Y. Sup. Ct. N.Y. Cty. Mar. 4, 2005)..........6

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
478 F. Supp. 3d 794 (W.D. Mo. 2020)..........8

*Tappo of Buffalo, LLC v. Erie Ins. Co.*,
2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020)..........6

*Thor Equities, LLC v. Factory Mut. Ins. Co.*,
2021 WL 1226983 (S.D.N.Y. Mar. 31, 2021)..........10

*United Airlines, Inc. v. Ins. Co. of State of Penn.*,
385 F. Supp. 2d 343 (S.D.N.Y. 2005)..........4, 5

*Urogynecology Specialty of Florida, LLC v. Sentinel Insurance Company*,
489 F. Supp. 3d 1297 (M.D. Fla. 2020)..........11

*Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*,
142 N.Y.S.3d 903 (N.Y. Sup. Ct. Orange Cty. 2021)..........4, 6

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*,
406 N.J. Super. 524 (App. Div. 2009)..........6

*Zwillo V, Corp. v. Lexington Ins. Co.*,
2020 WL 7137110 (W.D. Mo. Dec. 2, 2020)..........11

**PRELIMINARY STATEMENT**

Plaintiffs do not dispute that they have the initial burden to plead sufficient facts supporting their claims for coverage, including the burden to demonstrate that coverage is triggered by direct physical loss or damage. But Plaintiffs have wholly failed to meet their burden, as their allegations of "physical loss or damage" are wholly inadequate. As demonstrated by the many decisions applying New York law issued both before and after the filing of Defendant's moving papers, no "physical loss or damage" arises from COVID-19 or the related government orders, even when it is alleged that the Coronavirus was physically present on Plaintiffs' property.

Plaintiffs' attempts to evade and circumvent the "physical loss or damage" requirement are unavailing. Plaintiffs first argue that "loss" must mean something different than "damage," but the acceptance of Plaintiffs' argument would require this Court to completely ignore the policy wording clearly establishes that "physical" modifies both "loss" and "damage." Plaintiffs also attempt to conflate the suspected or actual presence of the ubiquitous Coronavirus with more persistent, location specific contaminants such as ammonia, asbestos, and gasoline fumes that (unlike COVID-19) can actually comprise the physical integrity of the property. An overwhelming majority of courts in New York and across the country have flatly rejected these very same arguments referencing the same cases raised by Plaintiffs.

Furthermore, even if it were determined that Plaintiffs have adequately pled "physical loss or damage," the unambiguous exclusion for contamination precludes coverage for all of the claimed losses. Plaintiffs' attempt to limit the exclusion's application to only "costs" would, once again, require this Court to rewrite the policy by removing the language precluding coverage for "any condition" of property arising from a virus, including the loss of use of such property. This is why an identical exclusion has been applied by courts in several very recent decisions to bar

coverage for COVID-19 losses.

In sum, no amount of linguistic gymnastics in Plaintiffs' pleading can cure the legal defects in the Complaint, or alter the conclusion that Plaintiffs' claim is barred by the terms of the Policy. As such, the Complaint should be dismissed with prejudice.

## A. PLAINTIFFS HAVE FAILED TO ESTABLISH PHYSICAL LOSS OR DAMAGE AS REQUIRED BY THE POLICY.

Plaintiffs bear the initial burden to allege facts demonstrating that coverage is triggered. *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 1034259, at *4 (S.D.N.Y. Mar. 18, 2021).[1] Employing the requisite two-prong approach in evaluating the sufficiency of the complaint, the Court must first discard any allegations that are nothing more than threadbare legal conclusions. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). It must then consider whether the remaining factual allegations, and all reasonable inferences that can be drawn therefrom, state a plausible claim for relief. *Id.*

Plaintiffs' complaint cites to and attaches numerous studies in support of their argument that the "rapid proliferation" of COVID-19 supports the "ubiquitous presence" of the virus on Plaintiffs' properties and businesses. Opp. Brief, at 12. However, courts in New York and elsewhere have rejected such efforts by insureds to claim the existence of physical loss or damage by presumptively pleading that COVID-19 was present on their properties, finding that such allegations are insufficient to support a claim of direct physical loss or damage. For example, while

[1] Plaintiffs have not and cannot establish that the law of any state other than New York applies to their claims. This is plainly so because the Policy contains a New York choice of law provision stating that "[t]he validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York." *See* Certification of Christopher S. Finazzo submitted with Defendant's moving papers ("Finazzo Cert."), Exh. A at WP000016.

accepting as true the scientific studies cited by the insureds regarding the pervasive spread of COVID-19, the Court in *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.,* 2021 WL 1600831 (W.D.N.Y. Apr. 23, 2021)[2] nevertheless granted Defendant's motion to dismiss. After citing to the "unbroken line of trial court decisions" applying New York law in ruling in the insurer's favor, the *Kim Chee* Court explained:

> The phrase "direct loss or damage" is unambiguous. . . The presence of the COVID-19 virus in the air or on the surfaces of a covered property does not qualify as damage to the property itself. The virus is short-lived – if "life" is the correct expression – and is rendered harmless by the passage of a few days of exposure to the environment . . . Because the presence of the virus does not alter the covered property, it is different from radiation, chemical dust and gas, asbestos and other contaminants which may persist and damage the covered property . . . The building itself remains unharmed by the virus and would be safe for occupancy except for the arrival of people who bring new sources of infection.

*Id.* at *4; *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) (statistics and data "do not support the conclusory assertion that the virus was present on the surfaces of Plaintiff's property, causing it losses"); *Roy H. Johnson, DDS v. The Hartford Fin. Servs. Grp.,* 2021 WL 37573, at *16-17 (N.D. Ga. Jan. 4, 2021) (Plaintiff cannot present a reliable method for determining if the virus could be detected in the offices, instead improperly relying on the "exceedingly high number of COVID-19 cases . . . and ease of person-to-person transmission").

Similarly, here, Plaintiffs contend that COVID-19 was present on their properties through the advancement of mere speculation about infection rate statistics, the number of airport travelers and infections among Plaintiffs' employees and Transportation Security Agency employees at airports. Complaint, ¶¶ 57-67, 75. But Plaintiffs have not and cannot trace any alleged virus

[2] Copies of all unpublished decisions cited in the Reply Memorandum and not previously provided to the Court are attached as Exhibit A to the Supplemental Certification of Christopher S. Finazzo, Esq.

infection to an exposure on their specific properties.

More importantly, as determined by the decisions cited above, even accepting as true the information contained in the cited scientific studies, the alleged presence of the virus in the air does not and cannot qualify as physical damage to the property itself. Any other result would mean that every building (and plane, train and automobile) across the nation and globe has sustained physical loss or damage due to the ubiquitous nature of the COVID-19 virus - a result that would defy common sense and be in direct contravention of the policy triggering language.

**1. OTG WRONGLY INTERPRETS THE POLICY TO COVER "LOSS OF USE".**

Plaintiffs employ a strained and parsed construction of the plain meaning of "direct physical loss or damage." They first ignore the word "physical" in arguing that "physical loss" should be interpreted to include the "physical dispossession" or the "inability to utilize" property. Opp. Brief at 10, 13-14. But "physical" modifies both "loss" and "damage" and as determined by nearly every court that has addressed this issue, the term "physical loss or damage" "unambiguously *cannot* refer to mere loss of use that is unconnected to any direct physical compromise of Plaintiff's property. *Deer Mountain Inn LLC v. Union Ins. Co.,* 2021 WL 2076218, at *9 (N.D.N.Y. May 24, 2021); *see also Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 910 (N.Y. Sup. Ct. Orange Cty. 2021); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, 2021 WL 1419782 (N.D.N.Y. Apr. 15, 2021); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, 2021 WL 1091711, at *3 (E.D.N.Y. Mar. 22, 2021). Furthermore, under New York law, the "loss" of property does not equate to "loss of use"; nor is "loss of use" sufficient to establish physical loss or damage.

New York courts have also repeatedly rejected the notion that government orders can constitute physical loss or damage. *See, e.g.*, *United Airlines, Inc. v. Ins. Co. of State of Penn.*, 385

F. Supp. 2d 343 (S.D.N.Y. 2005); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020); *10012 Holdings, Inc. v. Hartford Fire Ins. Co.*, 2020 WL 7360252 (S.D.N.Y. Dec. 16, 2020); *Food for Thought Corp. v. Sentinel Ins. Co., Ltd.*, 2021 WL 860345, at *4-5 (S.D.N.Y. Mar. 6, 2021). Therefore, because neither the "loss of use" of Plaintiffs' premises, nor the government orders allegedly prohibiting access to such premises, constitute "physical loss or damage," there can be no coverage under the Policy for Plaintiffs' claims.[3]

**2. UNDER CONTROLLING NEW YORK LAW, THE PHRASE "DIRECT PHYSICAL LOSS OR DAMAGE" REQUIRES PHYSICAL ALTERATION TO PLAINTIFFS' PROPERTY.**

Even assuming, *arguendo*, that Plaintiffs' complaint adequately alleged the presence of the Coronavirus at Plaintiffs' locations, such an allegation would still be insufficient to establish direct physical loss or damage to their property as a matter of law. In *Sharde Harvey*, the Court confronted nearly identical allegations as alleged by Plaintiffs here, namely that "physical loss or damage" was caused by "(1) the COVID-19 pandemic generally, (2) the government shutdown orders, or (3) COVID-19 contamination on its premises." 2021 WL 103249 at *8. The Court found each of these allegations to be insufficient, holding that the COVID-19 pandemic and the government orders did not "physically damage" the insured's property and that even the presence

---

[3] Plaintiffs rely on a piecemeal selection of out-of-state decisions that allegedly support their claim that "loss of use" constitutes "physical loss or damage." Opp. Brief. p. 10. Notably, these cases are out of line with the dozens of other courts in those same districts consistently holding that "loss of use" does not meet the requisite "physical loss or damage" standard. For example, *Kingray Inc. v. Farmers Grp. Inc.*, 2021 WL 837622 (C.D. Cal. Mar. 4, 2021), is unpersuasive because it relies on *Hughes v. Potomac Ins. Co. of D.C.*, 199 Cal. App. 2d 239 (1962). *Hughes* held that structural damage was not required for coverage when a home shifted in a landslide rendering it "completely useless." 199 Cal App. 2d 239 at 242. But this argument was expressly rejected by several California courts because *Hughes* does not support "the broader claim that temporary dispossession of property" qualifies as a covered loss. *Hair Perfect Int'l, Inc. v. Sentinel Ins. Co.*, No. 2:20-cv-03729-JAK-KS, Slip Op. at *10 (C.D. Cal. May 20, 2021). Similarly, *Henderson Road Restaurant Systems, Inc. v. Zurich American Ins. Co* 2021 WL 168422 (N.D. Ohio Jan. 21, 2021) was resoundingly rejected by subsequent court rulings. *See, e.g., Equity Planning Corp. v. Westfield Ins. Co.*, 2021 WL 766802 (N.D. Ohio Feb. 26, 2021).

of the virus on the insured property does not constitute the requisite "physical loss or damage" standard. *Id*. at *8-9.

The insured in *Sharde Harvey* attempted to rely upon the decision in *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*, 2005 WL 600021 (N.Y. Sup. Ct. N.Y. Cty. Mar. 4, 2005), to support its position that the alleged presence of the virus at its properties constituted physical loss or damage. *Schlamm Stone* concerned the dust, soot and smoke at Plaintiff's law firm after the September 11 attacks, with the Court holding that the presence of noxious particles in the air and on surfaces constituted property damage. The *Sharde Harvey* Court aptly distinguished the nature of COVID-19 from other forms of contamination, noting that in *Schlamm Stone* "despite cleaning carpets, airshafts, furniture and surfaces in the office," the damage to the premises persisted. *Sharde Harvey*, 2021 WL 1034259, at *10. These facts placed the claimed COVID-19 damage in *Schlamm Stone* "firmly on the other side of the line drawn by the New York COVID-19 cases that have found that contamination by a virus does not constitute 'direct physical loss' where the property merely needs to be cleaned and routine cleaning and disinfecting can eliminate its presence." *Sharde Harvey*, 2021 WL 1034259, at *10 (citing *Food for Thought Corp. v. Sentinel Ins. Co., Ltd.*, 2021 WL 860345, at *4-5 (S.D.N.Y. Mar. 6, 2021)); *see also Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020); *Visconti Bus Serv., LLC, supra*.[4]

---

[4] Ignoring the Policy's choice of law provision, Plaintiffs incorrectly assert that New Jersey law applies to the issue of direct physical loss or damage. However, even under New Jersey law, Plaintiffs' position on physical loss or damage fails. *See Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 406 N.J. Super. 524, n.7 (App. Div. 2009) (rejecting the arguments being advanced by Plaintiffs here, noting that if a "governmental agency" had ordered the power shutdown, no coverage would be found). Furthermore, under New Jersey's standard, Plaintiffs have failed to demonstrate a distinct, demonstrable alteration of their structure. *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934 (D.N.J. Nov. 25, 2014). As with courts across

Akin to the Plaintiff in *Sharde Harvey*, Plaintiffs here erroneously place COVID-19 in the same category as noxious substances that have been determined to render property unusable, asserting that the presence of the virus, the inability to fully utilize property during the pandemic, and the governmental orders constitute "direct physical loss or damage". Opp. Brief, at 9-10. According to Plaintiffs, COVID-19 "spread" throughout their properties and "attach[ed] to other surfaces or persons", thereby rendering Plaintiffs' properties "noxious", "dangerous", "nonfunctional", "unsafe", "unusable" and "uninhabitable". *Id.* at 5-6; Complaint, ¶¶ 41-43, 53-55. But New York courts have already rejected this exact argument. *See, e.g., Kim-Chee LLC*, *supra*, at *4; *Mohawk, supra*, at *14. Furthermore, because COVID-19 does not "alter the characteristics" of property, "[t]he building itself remains unharmed by the virus and would be safe for occupancy except for the arrival of people who bring new sources of infection." *Id.*; *see also Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021).

Recent CDC and state guidelines allowing vaccinated individuals to congregate indoors without masks or social distancing further illustrate this point. Vaccinated individuals may now safely regather unmasked in the same locations that, according to Plaintiffs, were somehow "uninhabitable" and filled with "noxious" substances just one moment before the issuance of these new CDC guidelines and executive orders. However, all that has changed is the vaccination status of the individuals occupying the property, <u>not</u> the state or condition of the property itself. *See Kim-Chee LLC, supra,* at *6. Plaintiffs would have this Court absurdly hold that the issue of

---

the country, the overwhelming majority of New Jersey courts have held that COVID-19 does not physically damage or alter property. *See, e.g.*, *Manhattan Partners, LLC v. Am. Guar. & Liab. Ins. Co.*, 2021 WL 1016113 (D.N.J. Mar. 17, 2021); *Arash Emami, M.D., P.C. v. CNA and Transportation Ins. Co.*, 2021 WL 1137997 (D.N.J. Mar. 11, 2021); *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, 2021 WL 1904739 (D.N.J. May 12, 2021).

whether property is physically lost or damaged is tied not to the actual physical alteration of the structure, but rather to the temporary loss of some of its use, which, in the case of COVID-19, is subject to change on any given day depending on the vaccination status of its occupants.[5] This clearly cannot be the right outcome.

Lastly, Plaintiffs wrongly interpret the holding in *Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1 (1st Dep't 2002), contending that *Roundabout* stands for a "limited proposition" that a policy equating "'loss' of 'the [insured's] property' with damage to or destruction of that property naturally does not cover 'loss of use' resulting from damage to 'off-site property'" and, therefore, is not instructive to the present matter for direct physical loss or damage to the Plaintiffs' actual property. Opp. Brief, at 20-21. But as addressed in Wausau's moving papers, New York courts have consistently relied upon *Roundabout* in determining that "physical loss or damage" unambiguously requires some form of actual, physical damage. *See also Deer Mountain Inn LLC v. Union Ins. Co.,* 2021 WL 2076218 (N.D.N.Y. May 24, 2021).

Plaintiffs similarly misinterpret *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), arguing that because the *Newman* court found that "physical loss or damage" need not "be tangible, structural or even visible" it somehow supports the position that their COVID-19 losses constitute "direct physical loss or damage." Opp. Brief, at 21. However, courts applying New York law have specifically rejected this very same

[5] Plaintiffs would also have this Court ignore New York law and instead apply disjointed, outlier out-of-state decisions addressing direct physical loss or damage, several of which have been unequivocally rejected by New York courts. Opp. Brief, p. 18. *See Sharde Harvey, supra,* at *11 (rejecting *In re: Society Ins. Co. COVID-19 Business Interruption Protection Ins. Litigation*, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021) because "the idea that a government shutdown order standing alone can trigger business interruption insurance has been consistently rejected by courts applying New York law"); *Food for Thought Corp., supra,* at *5 (rejecting *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020) because its holding is "contrary to New York law").

argument and continue to apply *Roundabout* and *Newman* when dismissing COVID-19 coverage complaints. *See Rye Ridge Corp. v. Cincinnati Ins. Co*., 2021 WL 1600475, at *2 (S.D.N.Y. Apr. 23, 2021); *6593 Weighlock Drive, LLC v. Springhill SMC Corp.*, 2021 WL 1419049, at *5 (N.Y. Sup. Ct. Onondaga Cty. Apr. 13, 2021); *Food for Thought Caterers Corp., supra*, at *3; *Deer Mountain Inn LLC, supra.* Plaintiffs thus seek to ignore the ever-growing collection of decisions rejecting these arguments in their continued attempt to conflate the issues and inject ambiguity into the Policy.

**B. THE CONTAMINATION EXCLUSION CLEARLY APPLIES PURSUANT TO THE PLAIN LANGUAGE OF THE POLICY.**

Plaintiffs also attempt to ignore the exclusionary language that plainly bars coverage for their claims. Under Plaintiffs' theory, the Contamination Exclusion "precludes coverage only for 'any cost' due to actual contamination." Opp. Brief, p. 25-26. But this interpretation belies the plain and unambiguous language stating that the Policy does not cover "Contamination, <u>and</u> any cost due to contamination, including the inability to use or occupy property . . .". Finazzo Cert., Exh. A at WP000031 (underlining added). "Contamination" is defined as "[a]ny condition of property that results from a contaminant" and "Contaminant is defined to specifically <u>include</u> "virus". *Id*. Inserting these definitions into the exclusion would result in the following reading: we do not cover any condition of property that results from a virus, and any cost due to any condition of property that results from a virus, including the inability to use or occupy property.

Plaintiffs' suggested reading of the exclusion ignores the actual wording when the definitions are duly considered. First, any condition of property is not limited to "cost"; it is a separate category of excluded coverage beyond "any cost." Second, even under the "any cost" language, the Contamination Exclusion expressly states that "any cost due to contamination" includes the "inability to use or occupy property or any cost of making property safe or suitable

for use or occupancy." Therefore, whatever distinctions Plaintiffs want to draw between costs and their alleged losses are wholly irrelevant because their alleged losses stem solely from the alleged inability of Plaintiffs or their customers to use their properties due to the Coronavirus, a virus that is a defined and excluded contaminant.

Plaintiffs' reliance on the decision in *Thor Equities, LLC v. Factory Mut. Ins. Co.*, 2021 WL 1226983 (S.D.N.Y. Mar. 31, 2021) is also misplaced. Initially, the issue of whether COVID-19 and the executive orders constituted the requisite "direct physical loss or damage" was not even before the Court in *Thor*. Second, the *Thor* court held that it would be reasonable to interpret the exclusion to only apply to "costs," despite also acknowledging that "[p]lainitff's reading of the exclusion could tend to render certain aspects of the exclusion meaningless." *Id.* at *4.

Wausau respectfully submits that the *Thor* ruling amounts to a misinterpretation of the exclusionary language. This conclusion is supported by the more recent decision in *Ascent Hospitality Management Co., LLC v. Employers Ins. Co. of Wausau*, 2021 WL 1791490 (N.D. Ala. May 5, 2021) (interpreting New York law), where the court held that the same contamination exclusion at issue applied to bar coverage for the insured's alleged COVID-19 losses. *Id.* at *5; *see also Ralph Lauren Corporation v. Factory Mut. Ins. Co.*, 2021 WL 1904739, at n.8 (D.N.J. May 12, 2021) (specifically declining to follow the ruling in *Thor Equities).*

Plaintiffs' remaining arguments against application of the Contamination Exclusion are equally unavailing. Plaintiffs assert that the placement of the Contamination Exclusion within the *Property Damage* section of the Policy, combined with the language that the exclusion applies "except as provided elsewhere in this Policy", means that the exclusion does not apply to the Policy's Time Element coverages. Opp. Brief, p. 26. But such a reading would require this Court to ignore the language in the Section II - Exclusions stating that the exclusions apply "unless

otherwise stated in the Policy" and to write out of the Policy the introduction to the exclusion section of the "SECTION III - Time Element" provisions specifically stating that the exclusions applicable to the Time Element coverages include the "exclusions elsewhere in this Policy." Finazzo Cert. Exh. A at WP000051. Clearly, the reference to exclusions contained "elsewhere in the Policy" includes the Contamination Exclusion found in Section II, and there is nothing in Section III stating that the Contamination Exclusion does not apply to those coverage provisions.

Additionally, Plaintiffs misstate the relevant legal standards applying to ambiguities in an insurance policy when arguing that the Contamination Exclusion should be "limited to pollution claims." Opp. Brief, at 27. Plaintiffs' error is evidenced by their reliance on the decision in *Urogynecology Specialist of Florida, LLC v. Sentinel Insurance Company*, 489 F. Supp. 3d 1297 (M.D. Fla. 2020). Importantly, the Court in *Urogynecology* examined a much differently worded exclusion applying to "loss or damage caused directly or indirectly by … *[p]resence, growth, proliferation, spread or any activity*" of a virus, words that are not contained in the Contamination Exclusion at bar. *Id.* at 1302.

Plaintiffs' reliance on *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 145 (App. Div. 2004) for the proposition that the Contamination Exclusion is limited to the application of industrial pollution claims is also misplaced. Opp. Brief, at 27. In *Zwillo V, Corp. v. Lexington Ins. Co.*, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020), the Western District of Missouri rejected this very argument because "the exclusion at bar includes 'virus' as part of its definition." *See also Ascent Hosp. Mgmt., Co.*, *supra*, at *7-8 (applying New York law to an identical contamination exclusion and finding that "any definition of 'virus' that somehow carves out COVID-19 is not a permissible meaning.)"

Plaintiffs next argue that the Contamination Exclusion does not bar coverage because it

lacks "anti-concurrent causation" language. Opp. Brief, at 27-28. But under New York law, the Court must examine the "most direct and obvious [efficient] cause" in determining the application of the policy exclusion. *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 48 (2d Cir. 2006).

Plaintiffs' argument that the governmental orders, and not the Coronavirus, is the proximate cause of their losses misconstrues the nature of Plaintiffs' losses. As recognized by the vast majority of courts addressing COVID-19 business interruption claims, the Executive Orders are "prompted by the virus." *See*, *e.g.*, *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, 2021 WL 276655 (S.D.N.Y. Jan. 27, 2021). So, too, here, there can be no reasonable dispute that COVID-19, and not the governmental orders, was the efficient proximate cause of Plaintiffs' losses and the lack of anti-concurrent causation language does not change that conclusion. This is why courts across the country have repeatedly applied exclusions to dismiss COVID-19 coverage claims even where there is a lack of anti-concurrent causation language. *See*, *e.g., Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, 2021 WL 2206077 (D.N.J. May 28, 2021).

## CONCLUSION

For the reasons stated herein, and as more fully addressed in Wausau's moving brief, it is respectfully requested that the Court dismiss with prejudice Plaintiffs' complaint in its entirety.

Dated: June 7, 2021

**FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**

By: */s/ Christopher S. Finazzo*
CHRISTOPHER S. FINAZZO, ESQ.
67 East Park Place, Suite 901
Morristown, New Jersey 07960
(973) 343-4960
christopher.finazzo@finazzolaw.com
*Attorneys for Defendant*
*Employers Insurance Company of Wausau*