**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OTG MANAGEMENT PHL LLC; | Civil Action No.: 2:21-cv-01240-WJM-MF |
| OTG MANAGEMENT PHL B, LLC; | |
| LAGUARDIA USA LLC; | |
| LGA AIRPORT RESTAURANTS, L.P.; | |
| OTG DCA VENTURE II LLC; | |
| OTG JFK T2 VENTURE, LLC; | |
| OTG JFK T5 VENTURE, LLC; | **DEFENDANT EMPLOYERS INSURANCE COMPANY OF WAUSAU'S NOTICE OF SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| OTG MANAGEMENT T8 LLC; | |
| OTG MANAGEMENT JFK LLC; | |
| OTG MANAGEMENT EWR LLC; | |
| OTG MANAGEMENT IAH, LLC; | |
| OTG MANAGEMENT MIDWEST LLC; | |
| OTG MANAGEMENT YYZ, LLC; | |
| OTG MCO VENTURE II LLC; | |
| OTG ORD VENTURE LLC; | |
| OTG EXPERIENCE, LLC; | |
| OTG CONCEPTS FRANCHISING, LLC; AND | |
| OTG MANAGEMENT LLC, | |
|                Plaintiffs,<br>v. | |
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, | |
|                Defendant. | |

1

Defendant Employers Insurance Company of Wausau ("Wausau") hereby submits the attached Memorandum Opinion and Order granting Defendant The Travelers Indemnity Insurance Company of America's Motion to Dismiss Plaintiff's First Amended Complaint, entered in *100 Orchard Street, LLC v. The Travelers Indemnity Insurance Company of America*, 1:20-cv-08452-JMF, 2021 WL 2333244 (S.D.N.Y. June 8, 2021), the Opinion and Order granting Defendant XL Insurance America, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint, entered in *Broadway 104, LLC d/b/a Café du Soliel v. XL Insurance American, Inc.*, No. 1:20-cv-03813-PKC, 2021 WL 2581240 (S.D.N.Y. June 23, 2021), the Order granting Defendants Sentinel Insurance Company, Hartford Insurance Company of the Midwest, and The Hartford Insurance Group's Motion for Judgment on the Pleadings and denying Plaintiffs' Motion to Consolidate, entered in *Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd.*, No. 1:20-cv-520-GWC, 2021 WL 2471315 (W.D.N.Y. June 16, 2021), and the Memorandum Opinion and Order granting National Fire Insurance Company of Hartford's Motion to Dismiss Plaintiff's Complaint, entered in *Office Solution Group, LLC v. National Fire Ins. Co. of Hartford*, No. 1:20-cv-4736-GHW, 2021 WL 2403088 (S.D.N.Y. June 11, 2021), in further support of Wausau's Motion to Dismiss Plaintiffs' Complaint (Dkt. Nos. 8 and 20).

Dated: July 6, 2021                                      Respectfully submitted,

**FINAZZO COSSOLINI O'LEARY**
**MEOLA & HAGER, LLC**

By: */s/ Rachel R. Hager*
      RACHEL R. HAGER, ESQ.
      67 East Park Place, Suite 901
      Morristown, New Jersey 07960
      (973) 343-4960
      rachel.hager@finazzolaw.com
      *Attorneys for Defendant*
      *Employers Insurance Company of Wausau*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July 2021, I caused a true and complete copy of Defendant Employers Insurance Company of Wausau's Notice of Supplemental Authority in Further Support of Wausau's Motion to Dismiss, to be served on all other counsel of record through the Court's electronic case filing system addressed as follows:

Harvey Bartle IV, Esq.
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, New Jersey 08540
(609) 919-6600
harvey.bartle@morganlewis.com

Sergio Oehninger, Esq. (*pro hac vice* forthcoming)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
sergio.oehninger@morganlewis.com
*Attorneys for Plaintiff*

*/s/ Rachel R. Hager*
RACHEL R. HAGER, ESQ.

2021 WL 2333244
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

100 ORCHARD
STREET, LLC, Plaintiff,
v.
THE TRAVELERS INDEMNITY
INSURANCE COMPANY
OF AMERICA, Defendant.

20-CV-8452 (JMF)
|
Filed 06/08/2021

MEMORANDUM OPINION AND ORDER

JESSE M. FURMAN United States District Judge

**\*1** This case is one of many insurance coverage disputes arising out of the COVID-19 pandemic. Plaintiff 100 Orchard Street, LLC ("Orchard Street"), which owns and operates the Blue Moon Hotel (the "Hotel") in New York City, alleges that its business was severely damaged by the COVID-19 virus, which "was present at and within" the Hotel and "render[ed] the premises unsafe," and by restrictions that the State and local governments imposed on travel, non-essential businesses, and gatherings in an effort to slow the spread of the virus. ECF No. 23 ("Am. Compl."), ¶¶ 14, 28-29, 84, 93-99.[1] Orchard Street filed a claim for its losses under a commercial insurance policy (the "Policy") issued by the Travelers Indemnity Company of America ("Travelers"). *Id.* ¶¶ 32, 35; *see* ECF No. 23-1 ("Policy"). On July 2, 2020, Travelers denied the claim, stating, as relevant here, that the Business Income, Extra Expense, and Civil Authority Clauses of the Policy — each of which covers loss of business income under certain circumstances — did not apply to Orchard Street's claimed losses and that, even if they did, the losses were expressly excluded from coverage under the Policy's Virus Exclusion Clause. Am. Compl. ¶ 35; ECF No. 23-2, at 1-4; *see also* Policy 44-45, 135.[2] This litigation — in which Orchard Street seeks a declaration that the Policy "includes coverage

for losses caused by the Coronavirus" and by "the Civil Authority Orders" issued in response thereto, Am. Compl. ¶ 161 — followed. Travelers now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint. ECF No. 24.[3]

Travelers is entitled to dismissal because, even drawing all reasonable inferences in Orchard Street's favor, the Amended Complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For starters, it is doubtful that the alleged physical presence of the COVID-19 virus on surfaces and in the air constitutes either "direct physical loss of or damage to property" at the Hotel, as is required to trigger the Policy's Business Income and Extra Expense Clauses, or "damage to property other than property at the [Hotel]," as is required to trigger its Civil Authority Clause. *Id.* at 44-45.[4] As other courts in this District have persuasively reasoned, "COVID-19 damages lungs, not property." *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-3350 (PGG) (RWL), 2021 WL 1034259, at \*9 (S.D.N.Y. Mar. 18, 2021) (citing *Social Life Magazine v. Sentinel Ins. Co.*, No. 20-CV-3311 (VEC), 2020 WL 2904834 (S.D.N.Y. May 14, 2020)). Put differently, while the presence of COVID-19 may render property potentially harmful to people, it does not constitute harm *to* the property itself. *See* Webster's Third New International Dictionary 571 (2002) (defining "damage" as "injury or harm *to* person, property, or reputation" (emphasis added)). Thus, it is unsurprising that most courts that have decided the issue have held that the physical presence of COVID-19 does not constitute property loss or damage within the meaning of insurance policies like the one here.[5]

**\*2** Ultimately, however, the Court need not and does not decide that question — which Travelers addresses only in a footnote, *see* Def.'s Mem. 7 n.5 — because the Policy contains a Virus Exclusion Clause that independently and unambiguously bars coverage of Orchard Street's business losses at issue. *See* Def.'s Mem. 11-14. The Clause, which modifies all coverage under the Commercial Property Coverage Part of the Policy, including the Business Income, Extra Expense, and Civil Authority Clauses, states as follows: "We

will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Policy 135; *see id.* at 5, 44-45.[6] It is undisputed that COVID-19 is a viral disease, as Orchard Street acknowledges in its pleadings. *See, e.g.*, Am. Compl. ¶¶ 14, 59 (describing "the COVID-19 virus" and "[t]he virus that causes COVID-19"); *id.* ¶ 15 (alleging that infection with COVID-19 "may produce deadly results to human beings"). And Orchard Street attributes its alleged losses to "[t]he COVID-19 pandemic" generally; the "continuous presence of the coronavirus," i.e., the virus that causes COVID-19, "on or around [the Hotel's] premises"; and government orders that "were issued in direct response to both the spread and physical presence of COVID-19 on persons and property." *Id.* ¶¶ 51, 100-101, 152. It follows that Orchard Street's business losses were plainly "caused by," or at least "result[ed] from," a "virus" that "is capable of inducing physical distress, illness or disease," Policy 135, and are unambiguously excluded from coverage under the Policy.

Orchard Street's arguments to the contrary are unpersuasive. First, Orchard Street argues that the "legal proximate cause" of its losses was the government orders issued in response to the pandemic, not the virus itself. Pl.'s Opp'n 7. Orchard Street further notes that the Policy — unlike some other insurance contracts that courts have considered in the COVID-19 context — does not contain "anti-concurrent causation language," meaning language specifying that losses caused by a virus are excluded from coverage regardless of any other causes that may have contributed to the loss. *Id.* at 8. Be that as it may, COVID-19 is the "efficient proximate cause" of any business losses resulting from government restrictions imposed in an effort to contain the virus. "The efficient proximate cause of a loss is the cause that originally sets other events in motion," although courts must not "trace events back to their metaphysical beginnings."

*Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 48 (2d Cir. 2006) (internal quotation marks omitted). The inquiry is "whether the parties contemplated that the exclusion would apply in a circumstance such as that presented," in light of "the reasonable expectation and purpose of the ordinary business person when making an

ordinary business contract." *Album Realty Corp. v. Am. Home Assur. Co.*, 607 N.E.2d 804, 805 (N.Y. 1992) (cleaned up) (quoting *Bird v. St. Paul Fire & Marine Ins. Co.*, 120 N.E. 86, 87 (N.Y. 1918) (Cardozo, J.)). Here, a reasonable business person would plainly contemplate that an exclusion for losses "caused by or resulting from any virus" would extend to losses caused by immediate efforts to mitigate a viral outbreak. In short, "there is no genuine dispute that the activity of a virus, namely COVID-19, set government restrictions in motion, and is therefore the efficient proximate cause of [Orchard Street's] claimed losses." *BA LAX, LLC v. Hartford Fire Ins. Co.*, — F. Supp. 3d —, No. 2:20-CV-6344 (SVW) (JPR), 2021 WL 144248, at *4 (C.D. Cal. Jan. 12, 2021); *accord Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-CV-8393 (FLW) (DEA), 2021 WL 486917, at *6 (D.N.J. Feb. 10, 2021); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, — F. Supp. 3d —, No. 8:20-CV-1416-T-02 (SPF), 2021 WL 22314, at *8 (M.D. Fla. Jan. 4, 2021).

Second, Orchard Street argues that the Virus Exclusion Clause does not explicitly apply to losses caused by "a national state of disaster like the current pandemic." Pl.'s Opp'n 7. But in the context of a viral pandemic, "the word 'pandemic' describes a disease's geographic prevalence"; "it does not replace disease as the harm-causing agent." *Boxed Foods Co. v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 523 (N.D. Cal. 2020), *as amended* (Oct. 27, 2020); *see also Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, — F. Supp. 3d —, No. 20-CV-5818 (PAE), 2021 WL 276655, at *8 n.5 (S.D.N.Y. Jan. 27, 2021) ("[T]he COVID-19 pandemic is simply a large-scale outbreak of a virus."). In rejecting the same argument that Orchard Street advances here, another district court persuasively likened it to an argument "that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire." *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1242 (C.D. Cal. 2020) (internal quotation marks omitted). Although it may be true that other insurance contracts include provisions expressly disclaiming losses caused by "pandemics and epidemics," as Orchard Street contends, Pl.'s Opp'n 7, "the fact that [an insurer] could have used

*even more* specific language does not [necessarily] render ambiguous the language that [it] actually used," *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1041 (W.D. Tex. 2020).

**\*3** Finally, Orchard Street cites *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co.*, 489 F. Supp. 3d 1297 (M.D. Fla. 2020), for the proposition that "[i]t is unclear that the Virus or Bacteria endorsement would apply as to a viral pandemic." Pl.'s Opp'n 8. That case, however, appears to be an outlier. *See, e.g.*, *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1188-90 (S.D. Fla. 2020) (interpreting the same language to exclude coverage for losses arising from COVID-19); *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 427 (E.D. Pa. 2020) (same); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020) (same). It is also distinguishable, as the clause at issue stated that the insurer "[would] not pay for loss or damage caused directly or indirectly by ... [the p]resence, growth, proliferation, spread, or any activity of 'fungi,' wet rot, dry rot, bacteria or virus." *Urogynecology Specialist of Fla.*, 489 F. Supp. 3d at 1301 (cleaned up). In holding that the clause did not unambiguously apply to COVID-19, the court reasoned in relevant part that COVID-19 "does not logically align with the grouping of ... other pollutants." *Id.* at 1302. That is not the case here here because the Virus Exclusion Clause includes "microorganism[s] that induce[ ] or [are] capable of inducing physical distress, illness or disease," and does not include microorganisms that primarily cause structural damage. Policy 135.

For the foregoing reasons, Travelers's motion to dismiss is GRANTED, and Orchard Street's Amended Complaint is dismissed in its entirety. Moreover, the Court declines to grant Orchard Street leave to amend its Amended Complaint *sua sponte*. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted). Here, the problems with Orchard Street's claims are substantive, so amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases). Moreover, Orchard Street does not request leave to amend or suggest that it is in possession of facts that would cure the problems with its claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Finally, the Court granted Orchard Street leave to amend its original complaint in response to Travelers's motion to dismiss and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 13; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

The Clerk of Court is directed to terminate ECF No. 24, to enter judgment for Defendant consistent with this Opinion and Order, and to close the case.

SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 2333244

---

Footnotes

1    These facts — which are drawn from the Amended Complaint, documents incorporated by reference therein, and materials of which the Court may take judicial notice — are assumed to be true for purposes of this motion. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

2    Citations to the Policy refer to the page numbers automatically generated by the Court's ECF system.

3    The parties agree that New York law governs interpretation of the Policy, *see* ECF No. 26 ("Def.'s Mem."), at 9; ECF No. 28 ("Pl.'s Opp'n"), at 10, which "is sufficient to establish choice of law," *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (internal quotation marks omitted).

4    The Civil Authority Clause also requires that "[a]ccess" to the insured premises was "prohibited by civil authority." Policy 45. Orchard Street repeatedly alleges that the restrictions imposed by the State and local governments "prohibited access" to the Hotel. Am. Compl. ¶¶ 20, 30, 50, 101, 128-29, 147-48, 150-51; *see also id.* ¶ 102 ("As of March 22, 2020, Governor Cuomo ordered all 'non-essential businesses' statewide to be closed." (citing N.Y. Exec. Order No. 202.6 (Mar. 18, 2020))). But official guidance interpreting Executive Order 202.6 — of which the Court can take judicial notice, *see Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF), 2015 WL 1514894, at *1 n.1 (S.D.N.Y. Apr. 1, 2015) — defined hotels as essential businesses. *Governor Cuomo Issues Guidance on Essential Services Under The 'New York State on PAUSE' Executive Order*, N.Y. State (Mar. 20, 2020), https://www.governor.ny.gov/news/governor-cuomo-issues-guidance-essential-services-under-new-york-state-pause-executive-order. Accordingly, access to the Hotel was not "prohibited."

5    *See, e.g.*, *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest*, No. 20-CV-2777 (KAM) (VMS), 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, — F. Supp. 3d —, No. 20-CV-3418 (JGK), 2021 WL 860345, at *5 (S.D.N.Y. Mar. 6, 2021); *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, No. 20-CV-10850 (NMG), — F. Supp. 3d —, 2021 WL 858378, at *3-4 (D. Mass. Mar. 5, 2021); *15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's London Known as Syndicates AML 2001, WBC 5886, MMX 2010, & SKB 1897*, — F. Supp. 3d —, No. 20-CV-23407, 2021 WL 896216, at *6 (S.D. Fla. Feb. 22, 2021); *R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*, No. 8:20-CV-2323-T-30 (AEP), 2021 WL 686864, at *2-3 (M.D. Fla. Jan. 22, 2021); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754 (V) (Sr), 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883-84 (S.D.W. Va. 2020), *amendment denied*, No. 20-CV-401, 2021 WL 966886 (S.D.W. Va. Mar. 15, 2021); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693-94 (N.D. Ill. 2020), *reconsideration denied*, No. 20-CV-2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021).

6    In the Amended Complaint, Orchard Street also quotes from a separate provision of the Policy covering Building and Personal Property. Am. Compl. ¶¶ 24, 110; *see* Policy 24 (covering "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss"). The Building and Personal Property Clause also falls within the Commercial Property Coverage Part of the Policy and is thus subject to the Virus Exclusion Clause. *See* Policy 5, 24.

---

**End of Document**        © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 2581240
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

BROADWAY 104, LLC d/b/
a CAFÉ DU SOLEIL, Plaintiff,
v.
XL INSURANCE AMERICA,
INC., Defendant.

20-cv-3813 (PKC)
|
Filed 06/23/2021

OPINION AND ORDER

P. Kevin Castel United States District Judge

 **\*1**  Plaintiff Broadway 104, LLC, doing business
as Café du Soleil (the "Café"), operates a small
Manhattan restaurant that has suffered financial
losses during the Covid-19 pandemic and suspended
operations following state and municipal shutdown
orders. Defendant XL Insurance America, Inc. ("XL")
issued the Café a commercial insurance policy that
provided for business interruption coverage in the
event of direct physical loss of or damage to its
property. In April 2020, the Café submitted a written
claim to XL, seeking coverage for business losses
arising out of the pandemic and the government
shutdown orders. XL disclaimed coverage and asserted
that the Café's policy did not cover the claimed losses.

The Café's First Amended Complaint (the
"Complaint") brings claims for breach of contract and
breach of the duty of good faith and fair dealing, and
also seeks a declaration that XL wrongfully disclaimed
coverage. (Docket # 34.) The claims are brought on
behalf of a putative class. XL moves to dismiss the
Complaint pursuant to 🔖 Rule 12(b)(6), Fed. R. Civ.
P.

Because the Complaint does not plausibly allege that
the Café's suffered a covered loss under the XL policy,
the motion to dismiss will be granted.

BACKGROUND.
The Café is a small, family-owned restaurant in New
York City. (Compl't ¶ 2.) It is a sit-down restaurant that
primarily serves in-person customers. (Compl't ¶ 2.)

The Complaint recounts the events of March 2020,
when New York City (the "City") became the
"epicenter" of Covid-19 in the United States. (Compl't
¶¶ 21-30.) It states that on March 17, 2020, all of the
City's bars and restaurants were closed by order of
the mayor, with the exception of takeout and delivery
orders. (Compl't ¶ 29.) On March 22, 2020, Governor
Andrew Cuomo implemented a stay-at-home order,
which applied to non-essential businesses and workers
and remained in place for months. (Compl't ¶ 30.)

XL issued Commercial Property Policy number
PHK-0951383-00 (the "Policy") to plaintiff. (Compl't
¶ 12; Gonzalez Dec. Ex. A.) The Policy was effective
from June 25, 2019 to June 25, 2020. (Id.) Several
provisions of the Policy are relevant to the Café's
claims for relief. The Policy included coverage for the
loss of "Business Income" and stated in part:

> We will pay for the actual loss of Business Income
> you sustain due to the necessary "suspension" of
> your "operations" during the "period of restoration".
> The "suspension" must be caused by direct physical
> loss of or damage to property at premises which
> are described in the Declarations and for which a
> Business Income Limit Of Insurance is shown in the
> Declarations. The loss or damage must be caused by
> or result from a Covered Cause of Loss.

(Compl't ¶ 15; Gonzalez Dec. Ex. A at p. 49 of 162.)
It also provided that XL "will pay for direct physical
loss of or damage to Covered Property at the premises
described in the Declarations caused by or resulting
from any Covered Cause of Loss." (Gonzalez Dec.
Ex. A at p. 33 of 162.) "Covered Causes of Loss"
is defined as "direct physical loss unless the loss is
excluded or limited in this policy." (Id. at p. 75 of
162.) The Policy included a coverage provision stating
that XL "will pay for the actual loss of Business
Income you sustain and necessary Extra Expense
caused by action of civil authority that prohibits access
to the described premises" under certain specified
circumstances. (Compl't ¶ 20; Gonzalez Dec. Ex. A at
p. 50 of 162.) An exclusion to the Policy headed "NEW
YORK – EXCLUSION OF LOSS DUE TO VIRUS

OR BACTERIA" (the "Virus Exclusion") stated as follows: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Compl't ¶ 35 & Gonzalez Dec. Ex. A at p. 66 of 162.)

**\*2** The Complaint alleges that due to restrictions adopted by state and local authorities that were intended to mitigate the spread of Covid-19, the Café "suffered a direct physical loss of use of its restaurant and resulting significant loss of business income ...." (Compl't ¶ 33.) It alleges that "[b]y mid-March, 2020, Plaintiff was forced to suspend business operations at the restaurant ...." (Compl't ¶ 33.)

The Café submitted a claim to XL seeking coverage for the loss of business income, and XL denied coverage in a letter dated April 3, 2020. (Compl't ¶ 33.) The Complaint alleges that XL "heavily relied" on the Virus Exclusion, and that XL also asserted that the Café's lost business income was not covered because such loss was not a direct physical loss or damage to business property. (Compl't ¶ 35.)

The Café asserts that its lost revenue "should have been covered by the Policy because the COVID-19 pandemic is such a devastating, far-ranging, and unforeseen event that it does not fall within a reasonable interpretation of the 'virus' exclusion in the Policy endorsement ...." (Compl't ¶ 36.) It also asserts that its business closure was not the direct result of Covid-19 contamination, but of the virus's presence in the surrounding area and of closures mandated by civil authorities. (Compl't ¶¶ 36, 38.) The Complaint asserts that XL's reliance on the Virus Exclusion is contrary to the exclusion's text and purpose. (Compl't ¶¶ 38-41.)

The Complaint brings three causes of action. First, it asserts breach of contract, and alleges that XL wrongfully disclaimed coverage based on mischaracterizations of the Policy. (Compl't ¶¶ 49-53.) Second, it asserts breach of a duty of god faith and fair dealing, and alleges that XL has acted in bad faith and evaded "the spirit of the bargain." (Compl't ¶¶ 54-59.) Third, it seeks a declaration that XL is obligated to insure the Café because its business was restricted due to "civil authority business closures." (Compl't ¶¶ 60-66.) Subject matter jurisdiction is premised on

the minimal diversity requirement of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). (Compl't ¶¶ 7-9.)

RULE 12(b)(6) STANDARD.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.' " Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

A complaint is " 'deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.' " Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 80 (2d Cir. 2018) (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011)). The Court may therefore consider such documents, including those submitted by a defendant, as part of a Rule 12(b)(6) motion without converting the motion into one for summary judgment. Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 565-66 (2d Cir. 2006). In an insurance coverage dispute, a court adjudicating a motion to dismiss may properly consider a policy referenced in the complaint. See, e.g., New Image Roller Dome, Inc. v. Travelers Indem. Co. of Illinois, 310 Fed. App'x 431, 432 (2d Cir. 2009)

DISCUSSION.

I. The Complaint Does Not Plausibly Allege that the Café Suffered a "Direct Physical Loss" of Property.

**\*3** "In determining a dispute over insurance coverage, [courts] first look to the language of the policy." Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co., 28 N.Y.3d 675, 681 (2017) (quotation marks omitted). "Insurance contracts are governed by the general rules of contract interpretation. When resolving disputes concerning the scope of coverage, [courts] look to the specific language in the relevant insurance policies." Chen v. Ins. Co. of the State of Pennsylvania, 36 N.Y.3d 133, 138 (2020). "The language of a policy, when clear and unambiguous, must be given its plain and ordinary meaning." Id. "Insurance policies must be construed in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." Selective Ins. Co. of Am. v. Cty. of Rensselaer, 26 N.Y.3d 649, 655 (2016) (quotation marks and alterations omitted).

The Policy provides in relevant part: "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct physical loss of or damage to property at premises .... The loss or damage must be caused by or result from a Covered Cause of Loss." (Gonzalez Dec. Ex. A at p. 49 of 162.) Thus, under the unambiguous terms of the Policy, the parties agreed that XL would provide coverage for lost income during the suspension of operations, but only if that suspension was "caused by direct physical loss of or damage to property at premises ...." (Id.)

The Café urges that the phrase "direct physical loss" should be broadly construed to include the deprivation of property access, explaining that the disjunctive "or" distinguishes "direct physical loss" from the concept of "damage." Citing definitions from dictionary.com, the Café notes that "loss" is defined to mean "failure to keep, have, or get" and "the state of being deprived of or of being without something that one has." (Opp. Mem. at 5.) It urges that the term "direct physical loss" is at least ambiguous, thereby making its claims for relief plausible.

The Café's argument ignores the adjectives "direct" and "physical" that precede the word "loss." The phrase "direct physical loss" describes tangible loss and cannot reasonably be read to encompass a regulatory restriction against certain uses. Further, the Café essentially reads the word "property" out of the relevant language. It is true that the Policy distinguishes "loss" from "damage," but both terms are applied to the word "property," as reflected by the prepositions "of" and "to." The Policy provides for coverage when the insured suffers "direct physical loss of ... property" or "damage to property" on the premises. The parties did not agree to coverage in the event that the Café suspends operations due to "loss" in a generalized sense, but due to the direct physical loss of property.

Additional provisions of the Policy are consistent with this construction. The definition of "Business Income" states that XL "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' " (Gonzalez Dec. Ex. A at p. 49 of 162.) The "period of restoration" terminates the earlier of when "the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality," or when business resumes at a new permanent location. (Id. at p. 57 of 162.) Coverage for the loss of "Business Income" is therefore directly related to the time required to restore physically damaged property.

This definition of "direct physical loss" is consistent with authorities that have considered identical or near-identical language. See, e.g., Roundabout Theatre Co. v. Cont'l Cas. Co., 302 A.D.2d 1, 7 (1st Dep't 2002) ("the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property."); Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd., 2021 WL 1034259, at \*6 (S.D.N.Y. Mar. 18, 2021) ("Under New York law, it is unambiguous that (1) 'loss of' property does not encompass 'loss of use' of that property; and (2) insurance provisions that cover business interruption 'caused by direct physical loss of or physical damage to property' provide coverage only where the insured's property suffers direct physical damage.") (Lehrburger, M.J.) (quotation marks omitted); Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd., 2021 WL 860345, at \*4

(S.D.N.Y. Mar. 6, 2021) ("the great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss.") (Koeltl, J.); DeMoura v. Cont'l Cas. Co., 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) ("New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of the property.") (Garaufis, J.); Soundview Cinemas Inc. v. Great Am. Ins. Grp., 71 Misc. 3d 493, 507 (N.Y. Sup. Ct. Nassau Cnty. 2021) ("While the Court is sympathetic to the economic consequences resulting from the closure of Plaintiff's movie theater, the Court concurs with the majority view that loss of use of the Premises due to COVID-19 related government orders does not constitute 'direct physical loss of or damage to the property' that would trigger Business Income coverage under the Policy.").

 **\*4** The Complaint does not allege that the Café suffered a "direct physical loss" of property that would provide for business interruption coverage under the Policy. The Court therefore concludes that the Café has not plausibly alleged a covered loss. Because the breach of contract claim and claim for declaratory judgment are premised on the allegedly improper denial of coverage, Counts I and III will be dismissed.

II. The Café Has Not Plausibly Alleged Coverage Pursuant to the Policy's Civil Authority Provision. The Policy also provides for coverage of lost business income in the event that a civil authority prohibits the insured's access to the premises due to nearby damage in the immediately surrounding area (the "Civil Authority Provision"). (Gonzalez Dec. Ex. A at p. 50 of 162.) This provision states in relevant part:

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Id.)

The Café asserts that because its closure was "prompted [by] the state's civil authority orders to shutdown dining in Plaintiff's restaurant," XL has a contractual obligation to pay for the resulting loss. (Compl't ¶¶ 36-38, 62.)

First, the Complaint does not plausibly allege a covered loss under the Civil Authority Provision because it does not allege that authorities prohibited the Café from accessing the premises. It alleges the existence of "civil authority mandating non-essential business closures due to COVID-19 infections and property contamination in New York City and the surrounding area" and states that the Café closed due to "the state's civil authority orders to shutdown dining in Plaintiff's restaurant." (Compl't ¶¶ 5, 36.) But the Civil Authority provision provides coverage for lost business income when a civil authority "prohibits access to the described premises ...." The Complaint does not describe the prohibition of access, but the prohibition of "dining in Plaintiff's restaurant." See, e.g., Food for Thought Caterers, 2021 WL 860345, at *6-7 (coverage provision did not apply where "no civil authority order denied complete access"); Mangia Rest. Corp. v. Utica First Ins. Co., 2021 WL 1705760, at *5 (N.Y. Sup. Ct. Queens Cnty. Mar. 30, 2021) ("A limitation of use is not the equivalent of a 'prohibition of access.' Plaintiff could have continued to operate its restaurant under a 'limitation.' ").

Second, the Complaint does not allege that authorities prohibited the Café from accessing the premises based on damaged property. The Complaint describes business restrictions directed toward the spread of Covid-19, but the Civil Authority Provision applies

if "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority ...." The Café's does not describe measures taken by authorities in response "damaged property" in the surrounding area, nor "in response to dangerous physical conditions ...." There is no allegation that authorities prohibited the Café from preparing and selling meals from the premises for customer pickup or delivery. The Café has not plausibly alleged that it was wrongfully denied coverage under the Civil Authority Provision. This conclusion is consistent with authorities that have considered similar policy language. See, e.g., Food for Thought Caterers, 2021 WL 860345, at *6-7 (civil authority provision did not apply where plaintiff failed to allege implementation of orders based on "risks of direct physical loss to property in the surrounding area" and "failed to allege that property in the surrounding area was physically damaged."); 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd., 2020 WL 7360252, at *4 (S.D.N.Y. Dec. 15, 2020) (Covid-19 closure orders did not give rise to coverage obligations because "the Civil Authority provisions address a factually distinct situation – when some dangerous condition on neighboring premises forces a shutdown of Plaintiff's premises.") (Schofield, J.).

 **\*5** The Complaint does not plausibly allege the Café suffered a loss covered under the Civil Authority Provision. Because the breach of contract claim and claim for declaratory judgment are premised on the allegedly improper denial of coverage under this provision, those claims are dismissed.

    III. The Policy's "Virus Exclusion" Precludes Coverage.

Lastly, the Policy's Virus Exclusion states: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Compl't ¶ 35 & Gonzalez Dec. Ex. A at p. 66 of 162.)

"The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co., 12 N.Y.3d 302, 306 (2009). " 'Any such exclusions or exceptions from policy

coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.' " Id. at 307 (quoting Seaboard Surety Co. v. Gillette Co., 64 N.Y.2d 304, 311 (1984)).

The Complaint repeatedly describes the Café's business losses as a consequence of the Covid-19 pandemic. It alleges that "Plaintiff's business closure [was] due to the COVID-19 pandemic" and that its business was "devastated by the impact of the pandemic." (Compl't ¶¶ 1-2.) The Complaint alleges that New York City was "as hard-hit by COVID-19 as any other area in the world," resulting in tens of thousands of deaths, and that due to authorities' restrictions on movement and non-essential businesses, the Café "suffered a direct physical loss of use of its restaurant and resulting significant loss of business income ...." (Compl't ¶¶ 32-33.) It proceeds to allege:

[The Café's] loss of business profits should have been covered by the Policy because the COVID-19 pandemic is such a devastating, far-ranging, and unforeseen event that it does not fall within a reasonable interpretation of the "virus" exclusion in the Policy endorsement, and both Plaintiff's loss of use of its business property and of business profits constituted covered causes of loss under the Policy. The current global catastrophe is much different from, for example, an episode of food poisoning affecting several restaurant patrons. The COVID-19 pandemic is much closer to a natural disaster than a "loss due to virus or bacteria." Importantly, Plaintiff's business closure was not the direct result of any COVID-19 infection or contamination in its restaurant, but as a result of infections and contaminations in New York City and the surrounding area that prompted the state's civil authority orders to shutdown dining in Plaintiff's restaurant.

(Compl't ¶ 36.)

The Café urges that the Virus Exclusion is narrow because, unlike other similar policies, its language does not exclude loss caused "directly or indirectly" by a virus. (Opp. Mem. at 20-21.) It urges that the relevant language therefore has "causal ambiguities" that cannot be construed on a motion to dismiss. (Id.) It also argues that the orders of civil authorities were the efficient proximate cause of the business losses, as opposed to the Covid-19 virus itself. (Id. at 21-22.)

**\*6** The Court concludes that the Virus Exclusion is unambiguous and excludes the coverage sought by the Café. "[T]he issue of whether a provision in an insurance policy is ambiguous is a question of law for the court to determine, and a provision in an insurance contract is not ambiguous merely because the parties interpret it differently." Atl. Mut. Ins. Co. v. Terk Techs. Corp., 309 A.D.2d 22, 28 (1st Dep't 2003) (internal citation omitted). The Café has not identified an ambiguity in the Virus Exclusion, and the fact that authorities broadly directed the shutdown of non-essential businesses does not demonstrate "causal ambiguities" in policy language. The Virus Exclusion is brief and straightforward, and provides that XL "will not pay for loss or damage caused by or resulting from any virus ... that induces or is capable of inducing physical distress, illness or disease." (Compl't ¶ 35 & Gonzalez Dec. Ex. A at p. 66 of 162.)

The Café's assertion that the Virus Exclusion ought not apply because of the scope and severity of the Covid-19 crisis is without merit. (Compl't ¶ 36.) The exclusion applies to "any virus" that induces or is capable of inducing illness, and is not, as the Café urges, limited to small or routine exposures or incidents of on-site contamination. (See Opp. Mem. at 21.)

To the extent that the Café urges that state and municipal shutdown orders are the "efficient proximate cause" of its losses, rather than the novel coronavirus, that argument does not place the loss beyond the Virus Exclusion, for the reasons persuasively explained by Judge Furman in 100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am., 2021 WL 2333424, at *2 (S.D.N.Y. June 8, 2021). In that case, the language of the relevant virus exclusion was identical to the one at issue here. Id. " 'The efficient proximate cause of a loss is the cause that originally sets other events in motion,'

although courts must not 'trace events back to their metaphysical beginnings.' " Id. (quoting Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 48 (2d Cir. 2006)). "The inquiry is 'whether the parties contemplated that the exclusion would apply in a circumstance such as that presented,' in light of 'the reasonable expectation and purpose of the ordinary business person when making an ordinary business contract.' " Id. (quoting Album Realty Corp. v. Am. Home Assur. Co., 80 N.Y.2d 1008, 1010 (1992)). "Here, a reasonable business person would plainly contemplate that an exclusion for losses 'caused by or resulting from any virus' would extend to losses caused by immediate efforts to mitigate a viral outbreak." Id.

Therefore, in addition to the Complaint's failure to allege a covered loss, the motion to dismiss is separately granted because any claimed loss would fall within the Virus Exclusion.

### IV. The Café's Claim for Breach of a Duty of Good Faith and Fair Dealing Is Dismissed.

Count II of the Complaint asserts that XL breached a duty of good faith and fair dealing "by purposefully mischaracterizing provisions of its insurance coverage agreements so as not to honor its contractual duties to Plaintiff and the Class under those agreements." (Compl't ¶¶ 54-59.) Because the Café has not plausibly alleged a breach of the duty of good faith and fair dealing, Count II will be dismissed.

Under New York law, "[t]he implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement. The implied covenant includes any promises which a reasonable promisee would be justified in understanding were included. However, no obligation may be implied that would be inconsistent with other terms of the contractual relationship." 1357 Tarrytown Rd. Auto, LLC v. Granite Properties, LLC, 142 A.D.3d 976, 977 (2d Dep't 2016) (internal citations omitted). When a defendant's actions are consistent with an agreement's "express and specific provisions," such a claim is properly dismissed. See id. In addition, a claim for breach of covenant of good faith and fair dealing may be dismissed as "duplicative" of a

contract claim where "both claims 'arise from the same facts and seek the identical damages for each alleged breach.' " Netologic, Inc. v. Goldman Sachs Grp., Inc., 110 A.D.3d 433, 434 (1st Dep't 2013) (quoting 📄 Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 70 A.D.3d 423, 426 (1st Dep't 2010)).

 **\*7**  For the reasons already explained, the Complaint has not plausibly alleged conduct by XL that contrary to the parties' contractual relationship. Count II also is not premised on facts or damages that are distinct from the Café's breach of contract claim.

XL's motion to dismiss is therefore granted as to Count II.

  V. Leave to Amend Is Denied.

In a footnote, the Café requests leave to file a second amended complaint in the event that the Court grants

"any aspect" of XL's motion. (Opp. Mem. at 25 n.17.) The Café amended its complaint following the Initial Pretrial Conference and the receipt of XL's pre-motion letter addressing the Civil Authority Provision and the Virus Exclusion. (Docket # 14, 34; Minute Entry, Sept. 24, 2020.) The Café's request for leave to amend does not explain the basis for any amendment. Leave to amend is therefore denied.

CONCLUSION.

Defendant's motion to dismiss is GRANTED. (Docket # 37.) The Clerk is directed to terminate the motion, close the case and enter judgment for the defendant.

SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 2581240

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 2471315
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

BUFFALO XEROGRAPHIX,
INC., SHATKIN F.I.R.S.T. LLC,
and TODD E. SHATKIN DDS
PLLC, for themselves and on
behalf of a class of similarly
situated policyholders, Plaintiffs,

v.

SENTINEL INSURANCE COMPANY,
LTD., HARTFORD CASUALTY
INSURANCE COMPANY, and
HARTFORD INSURANCE COMPANY
OF THE MIDWEST, Defendants.

Case No. 1:20-cv-520
|
Filed 06/16/2021

**ORDER ON DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS AND
PLAINTIFFS' MOTION TO CONSOLIDATE
CASES (Docs. 70, 75)**

Geoffrey W. Crawford, Judge United States District
Court

*\*1* In April 2020, Plaintiffs Buffalo Xerographix,
Inc., Shatkin F.I.R.S.T. LLC, and Todd E. Shatkin
DDS PLLC sued Sentinel Insurance Company, Ltd.,
Hartford Casualty Insurance Co., Hartford Insurance
Company of the Midwest (collectively, "Insuring
Defendants"), and The Hartford Insurance Group
("HIG") for breach of contract and violations of
New York General Business Law § 349. (*See*
Docs. 1, 60.) Plaintiffs' claims arise from Insuring
Defendants' denial of coverage for Plaintiffs' business
losses related to the COVID-19 pandemic. In a
May 2021 order, the court granted HIG's motion to
dismiss Plaintiffs' claims against it. (Doc. 76.) Insuring
Defendants have now filed a motion for judgment on

the pleadings under Fed. R. Civ. P. 12(c). (Doc. 75.)
Plaintiffs filed a brief in opposition (Docs. 77, 78), to
which Insuring Defendants replied (Doc. 79).

**Factual Background**

Plaintiffs are businesses located in Erie County, New
York. The Amended Complaint alleges that each
Plaintiff contracted with one of Insuring Defendants
for commercial property insurance. (Doc. 60 ¶¶ 1, 3.)

**A. Insurance Policies**

Copies of Plaintiffs' insurance policies are attached to
the Amended Complaint. (*See* Docs. 60-1, 60-2, 60-3.)
Each insurance policy includes "(a) policies identified
by Defendants as 'Spectrum Business Owner's Policy';
and/or (b) Special Property Coverage Form SS 00
07 07 05 (the 'Policy')." (Doc. 60 ¶ 3.) The Policy
provides that Insuring Defendants "will pay for *direct
physical loss of or physical damage to* Covered
Property at the premises described in the Declarations
caused by or resulting from a Covered Cause of
Loss." (Doc. 60-1 at 36 (emphasis added).[1]) The
Policy defines "Covered Cause of Loss" as "RISKS
OF DIRECT PHYSICAL LOSS unless the loss is a.
Excluded in Section B., EXCLUSIONS; or b. Limited
in Paragraph A.4. Limitations ...." (*Id.* at 37.)

The Policy includes coverage for loss of business
income arising from a covered loss. Specifically,
Insuring Defendants promise to

> pay for the actual loss of Business Income you
> sustain due to the necessary suspension of your
> "operations" during the "period of restoration."
> The suspension must be caused by direct physical
> loss of or damage to property at the "scheduled
> premises," ... caused by or resulting from a Covered
> Cause of Loss.

(Doc. 60-1 at 45.) The Policy also includes Civil
Authority coverage, which applies "to the actual loss
of Business Income you sustain when access to your
'scheduled premises' is specifically prohibited by
order of a civil authority as the direct result of a
Covered Cause of Loss to property in the immediate
area of your 'schedule premises.' " (*Id.* at 46.)

Plaintiffs' policies do not contain the so-called "Virus Exclusion" developed by the Insurance Service Office ("ISO"). (Doc. 60 ¶ 75.) This standard form policy endorsement eliminates certain virus- and bacteria-related losses from coverage under insurance policies. (*Id.* ¶ 72.) Insuring Defendants have issued commercial property insurance policies that contain the Virus Exclusion. (*Id.* ¶ 73.)

### B. Plaintiffs' Claims

**\*2** In spring 2020, Plaintiffs closed their businesses due to the COVID-19 pandemic and suffered business losses arising from those closures. Plaintiffs submitted claims to their insurers, alleging the following "covered losses":

- Plaintiffs' employees, customers, and vendors were exposed to the coronavirus or contracted COVID-19. (Doc. 60 ¶ 81.)

- The covered premises were exposed to the coronavirus or people suffering COVID-19 were present at their premises. Plaintiffs could not use their premises because of the presence of the virus or due to orders issued by the civil authority. (*Id.* ¶ 82.)

- Property in the immediate vicinity of Plaintiffs' premises was exposed to the coronavirus or people with COVID-19 were present in the vicinity. (*Id.* ¶ 83.)

- Plaintiffs ceased business operations to comply with "government orders arising from the physical loss and damage caused by the Virus to their Premises and to properly in the vicinity of their Premises." (*Id.* ¶ 96.)

Plaintiffs further allege that the coronavirus is a "highly contagious" "physical substance" that "survives on and is active on inert physical surfaces." (*Id.* ¶¶ 84–86.) Moreover, "[i]nfectious airborne droplets and smaller aerosols that remain suspended in the air for hours after release are a major transmission source of the Virus." (*Id.* ¶ 90.) The risk of infection is higher indoors than in open-air environments. (*Id.* ¶ 93.) The Amended Complaint alleges that the presence of the coronavirus caused New York state civil authorities to issue orders suspending business and the use of commercial property, including Plaintiffs' covered property. (*Id.* ¶ 102.)

### C. Denial of Coverage to Plaintiffs

Insuring Defendants denied coverage for Plaintiffs' claimed losses. The Amended Complaint alleges that Defendants denied coverage to Plaintiffs pursuant to a predetermined policy, without regard to Plaintiffs' individual circumstances or the presence of the coronavirus at Plaintiffs' premises. (Doc. 60 ¶¶ 140, 149.)

Copies of the letters denying coverage are attached to the Amended Complaint. (*See* Docs. 60-10, 60-11, 60-12.) In the letters, Defendants state that the Policy does not cover the claimed loss because "the coronavirus did not cause property damage at [Plaintiffs'] place of business or in the immediate area" and that Plaintiffs incurred losses because they "had to close or limit [their] business to help prevent the spread of COVID-19." (Doc. 60-10 at 2; Doc. 60-11 at 2; *see also* Doc. 60-12 at 2.)

### Analysis

### I. Legal Standard

Courts review motions under Fed. R. Civ. P. 12(c) under "the same standard as that applicable to a motion under Rule 12(b)(6)." *Mantena v. Johnson,* 809 F.3d 721, 727–28 (2d Cir. 2015) (quoting *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir. 1999)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although the court construes factual allegations and draws all reasonable inferences in favor of the non-moving party, *Lanier v. Bats Exch., Inc.,* 838 F.3d 139, 150 (2d Cir. 2016), "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Empire Merchants, LLC v. Reliable Churchill LLLP,* 902 F.3d 132, 139 (2d Cir. 2018) (quoting *Iqbal,* 556 U.S. at 570). The court will grant a Rule 12(c) motion only if it "is satisfied that

the complaint cannot state any set of facts that would entitle [the non-moving party] to relief." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

## II. Governing Law

**\*3**  A federal court sitting in diversity applies the substantive law of the forum state, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including that jurisdiction's choice-of-law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). The New York Court of Appeals follows the "center of gravity" test in identifying the jurisdiction whose substantive law governs contract disputes. *Auten v. Auten*, 308 N.Y. 155 (1954). Under this approach, a contract of liability insurance is "governed by the law of the state which the parties understood to be the principal location of the insured risk ... unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties." *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S. 2d 30 (N.Y. App. Div. 2006) (cleaned up), *aff'd*, 876 N.E.2d 500 (N.Y. 2007); *see also Cunningham v. Equitable Life Assur. Soc'y of U.S.*, 652 F.2d 306, 308 n.1 (2d Cir. 1981) (per curiam).

Plaintiffs are New York businesses who purchased commercial property insurance for their business premises in the State of New York. Consequently, New York law governs Plaintiffs' breach-of-contract claim. In New York, a policyholder bears the initial burden of showing that its insurance contract covers the claimed loss. *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 7 (N.Y. App. Div. 2002); *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011). "Labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre*, 751 N.Y.S.2d at 7.

## III. Breach-of-Contract Claim

Plaintiffs' policies provide coverage for business interruptions caused by "direct physical loss or damage" to their insured premises or due to orders of a civil authority issued in response to "direct physical loss or damage" to nearby property that restricted Plaintiffs' access to their premises. Plaintiffs argue that they suffered covered losses because the presence of the coronavirus at or near the insured premises constitutes "direct physical loss of or physical damage."

To make this argument, Plaintiffs point to the existence of the so-called "Virus Exclusion" and the "Virus Limitation": standard form endorsements developed by the ISO that exclude or limit an insured's otherwise available coverage when the conditions of the endorsement are met. (*See* Doc. 78 at 17–18.) The Virus Exclusion provides: "We will not pay for loss or damage caused by or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Doc. 60-4 at 2.) The terms of the Virus Limitation are similar.[2] Defendants have issued policies containing the Virus Exclusion and the Virus Limitation, as well as policies containing neither limitation; Plaintiffs' policies contain neither. Plaintiffs argue that this omission constitutes an "express acknowledgement by [Defendants] that a virus is capable of causing 'direct physical loss of or damage to' property." (Doc. 78 at 18.) From this assertion, Plaintiffs jump to the conclusion that the presence of the coronavirus constitutes direct physical loss or damage.

**\*4**  However, Plaintiffs' reliance on the Virus Exclusion and Virus Limitation is misplaced. Regardless of whether *a* virus *could* cause direct physical loss of or damage to property, Plaintiffs do not plausibly allege that *the coronavirus* caused direct physical loss or damage to *their* premises or property in the vicinity of their premises. The Virus Exclusion and Virus Limitation operate by limiting or excluding coverage that would otherwise be available under an insured's policy; that is, they limit rather than expand coverage. Consequently, the endorsement becomes relevant only if an insured experiences an otherwise "covered loss." In that case, the Virus Exclusion or the Virus Limitation would limit the insured's recovery for the otherwise covered loss. In Plaintiffs' case, however, the omission of the Virus Exclusion and the Virus Limitation from Plaintiffs' policies is irrelevant

because Plaintiffs have not plausibly alleged that they suffered "direct physical loss or damage" to their property.

Many courts applying New York law, including this one, have already concluded that business closures due to the presence of the coronavirus or due to New York State executive orders do not constitute "direct physical loss or damage to" property. *See Kim-Chee LLC v. Phil. Indem, Ins. Co.*, No. 1:20-cv-1136, 2021 WL 1600831, at *5 (W.D.N.Y. April 23, 2021); *id.* at *3 (citing cases applying New York law). Relying on longstanding New York precedent, these courts have ruled that the phrase "direct physical loss or damage" is unambiguous and requires physical alteration of property. *Kim-Chee*, 2021 WL 1600831, at *4 (applying *Roundabout Theatre Co.*, 751 N.Y.S.2d at 8).

The *presence* of the coronavirus does not physically alter property in a permanent manner. In this respect, the virus is different from other physical or chemical contaminants that have been found to cause "direct physical loss or damage" to property. *Id.* at *5 (citing gasoline seepage, lead contamination, exposed asbestos, pervasive odor, and chemical or bacterial contamination as examples of "[c]ontamination of a structure that seriously impairs or destroys its function," thereby "qualify[ing] as direct physical loss"). Instead, the coronavirus poses a temporary health hazard to the occupants of a building, whose threat to human health dissipates with the passage of time. Many courts, including this one, have determined that merely temporary contamination does not qualify as "direct physical loss or damage." *Id.* (citing dust from road construction, mold or bacteria that could be eliminated by cleaning, and the controlled presence of asbestos as examples of such "short-lived" contamination).

The cases cited by Plaintiffs do not change this analysis. *Pepsico, Inc. v. Winterthur Int'l America Ins. Co.*, 806 N.Y.S.2d 709 (N.Y. App. Div. 2005), concerned the merchantability of beverage products. The Appellate Division held that a plaintiff need not demonstrate "physical damage" to insured property where the plaintiff could demonstrate "that the product's function and value have been seriously

impaired, such that the product cannot be sold." *Id.* at 744. That is not the case here; Plaintiffs experienced business losses because executive orders mandated the temporary closure of their businesses, and not because the virus fundamentally altered the function or value of their property.

Plaintiffs' situation is equally unlike that of the law firm in *Schlamm Stone & Dolan, LLP v. Seneca Insurance Co.*, 800 N.Y.S.2d 356 (N.Y. Sup. Ct. 2005), whose office filled with noxious particles due to the events of September 11, 2001. The *Schlamm* court held that the presence of such particles in the carpets and on the surfaces of the law firm's office constituted "property damage" because they "impair[ed] plaintiff's ability to make use of them." *Id.* The court then reasoned that the presence of noxious particles in the air also constituted property damage, because it would be "impossible" to "demonstrate[e] what portion of the losses were caused by particles suspended in the air that had never settled, and what portion were caused by particles that had been stirred up." *Id. Schlamm* is thus distinguishable from Plaintiffs' situation because it addressed a permanent, physical alteration of property accompanied by an indistinguishable transient, physical alteration. In contrast, Plaintiffs do not allege that the coronavirus caused a permanent, physical alteration of their insured property; instead, Plaintiffs contend that the coronavirus was present at or near their premises.

**\*5** Plaintiffs also cite two recent court decisions that denied an insurer's motion to dismiss in a COVID-19 business interruption case: *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), and *In re: Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2964, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021). The court acknowledges that other courts in some COVID-19 cases have concluded that the presence of the coronavirus might cause physical loss or damage to property. As discussed by the court in *Kim-Chee*, however, all New York cases applying New York law to the question of whether the coronavirus constitutes "direct physical loss or damage" have reached the opposite conclusion of *Studio 417* and *Society Insurance. See Kim-Chee*, 2021 WL 1600831,

at *6–7; *see also* Judicial Rulings on the Merits in the Business Interruption Cases, U. Pa. Covid Coverage Litigation Tracker, available at https://cclt.law.upenn.edu/judicial-rulings/.[3]

In this case, the alleged presence of the coronavirus has not caused a permanent change to Plaintiffs' properties or decreased the value and function of those properties. Instead, New York State executive orders issued in response to the coronavirus temporarily deprived Plaintiffs of the ability to use their properties for their intended purpose. Because Plaintiffs have not plausibly alleged that the presence of the coronavirus caused "direct physical loss of or damage to" their insured premises or nearby property, Plaintiffs cannot state a claim for breach of contract under either their business interruption coverage or civil authority coverage. Insuring Defendants are therefore entitled to judgment on the pleadings on Plaintiffs' breach of contract claim.

## IV. Claim Under 📑 **New York General Business Law § 349**

**\*6** The Amended Complaint asserts an additional claim against Insuring Defendants under 📑 N.Y. Gen. Bus. Law § 349. This statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." 📑 N.Y. Gen. Bus. Law § 349(a). To prevail on a claim under 📑 § 349, a plaintiff must establish "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." 📑 *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). Insuring Defendants argue that Plaintiffs establish neither the first nor the third required elements of their 📑 § 349 claim.

Plaintiffs devote most of their opposition to arguing that Insuring Defendants' behavior constitutes

"consumer-oriented" conduct. With respect to the third element, they simply argue that Insuring Defendants "charged Plaintiffs and other insureds premiums for insurance policies that did <u>not</u> contain a virus exclusion, while also charging other policyholders differing premiums for policies that <u>did</u> contain a virus exclusion. Nevertheless, Defendant universally denied coverage for any claim arising from the Virus." (Doc. 78 at 31.)

This court considered and rejected a similar argument in *Kim-Chee*, 2021 WL 1600831, at *8, which featured similar factual allegations. In that case as well as this one, the plaintiffs could not establish that they "suffered injury as a result of" the defendants' conduct —as required to state a claim under 📑 N.Y. Gen. Bus. Law § 349—because they did not plausibly allege "direct physical loss of or damage to" their insured property. In the absence of plausible allegations of covered losses, it is irrelevant whether Insuring Defendants uniformly processed Plaintiffs' claims alongside the claims of policyholders' whose policies contained the Virus Exclusion or Virus Limitation. Plaintiffs have not demonstrated their entitlement to coverage under the terms of their policy and cannot demonstrate that Insuring Defendants' processing of their claims caused them injuries. Consequently, Defendants are entitled to judgment on the pleadings on Plaintiffs' claim under 📑 § 349.

## Conclusion

Insuring Defendants' motion for judgment on the pleadings (Doc. 75) is GRANTED. Plaintiffs' motion to consolidate cases (Doc. 70) is DENIED AS MOOT.

Dated this <u>16</u><sup>th</sup> day of June, 2021.

**All Citations**

Slip Copy, 2021 WL 2471315

Footnotes

1     Each contract includes an identical Special Coverage Form. The court refers to docket entry 60-1 (Buffalo Xerographix's policy) for pinpoint citations.

2    The "Virus Limitation" consists of two subparts: a coverage exclusion and a limited coverage. The exclusion component of the Virus Limitation provides: "We will not pay for loss or damage caused directly or indirectly by any of the following....: (1) Presence, growth, proliferation, spread or any activity of ... virus." (Doc. 60-5 at 2.) The limited coverage portion of the Virus Limitation provides: "We will pay for loss or damage by ... virus. As used in this Limited Coverage, the term loss or damage means: (1) Direct physical loss or direct physical damage to Covered Properly caused by ... virus, including the cost of removal of the ... virus." (*Id.* at 3.)

3    In addition to *Kim-Chee*, several federal courts in the State of New York have reached this conclusion. *See Deer Mountain Inn LLC v. Union Ins. Co.*, No. 1:20-cv-0984, 2021 WL 2076218 (N.D.N.Y. May 24, 2021); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, No. 20 Civ. 7132, 2021 WL 1600475 (S.D.N.Y. Apr. 23, 2021); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, No. 8:20-cv-701, 2021 WL 1419782 (N.D.N.Y. Apr. 15, 2021); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-3350 (PGC) (RWL), 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, No. 20-cv-3418 (JGK), 2021 WL 860345 (S.D.N.Y Mar. 6, 2021); *Demoura v. Continental Cas. Co.*, No. 20-CV-2912 (NGG) (SIL), 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021); *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, No. 20 Civ. 5818 (PAE), 2021 WL 276655 (S.D.N.Y. Jan. 27, 2021); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, No. 20 Civ. 4471 (LGS), 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754V(Sr), 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020). Some New York state courts have also reached this conclusion. *See Mangia Rest. Corp. v. Utica First Ins. Co.*, No. 713847/ 2020, 2021 WL 1705760 (N.Y. Sup. Ct. Mar. 30, 2021); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 142 N.Y.S.3d 724, 735 (N.Y. Sup. Ct. 2021); and *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, No. EF005750-2020, 2021 WL 609851 (N.Y. Sup. Ct. Feb. 12, 2021). One New York court denied an insurer's Rule 12(c) motion where the insurance policy at issue provided coverage for "loss of use," which the court distinguished from "direct physical loss"—the relevant provision in the instant case. *See Thor Equities, LLC v. Factory Mut. Ins. Co.*, No. 20 CIV. 3380 (AT), 2021 WL 1226983, at *5, n.2 (S.D.N.Y. Mar. 31, 2021).

---

**End of Document**                                            © 2021 Thomson Reuters. No claim to original U.S.
                                                                Government Works.

2021 WL 2403088
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

OFFICE SOLUTION
GROUP, LLC, Plaintiff,

v.

NATIONAL FIRE
INSURANCE COMPANY
OF HARTFORD, Defendant.

1:20-cv-4736-GHW
|
Signed 06/11/2021

**Attorneys and Law Firms**

Kenneth Jay Grunfeld, Richard Moss Golomb, Golomb & Honik, P.C., Philadelphia, PA, Daniel Buttafuoco, Woodbury, NY, for Plaintiff.

H. Christopher Boehning, Yahonnes Sadiki Cleary, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendant.


MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

 **\*1**  Plaintiff Office Solution Group, LLC ("Office Solution Group") and Defendant National Fire Insurance Company of Hartford ("National Fire Insurance") entered into an insurance agreement (the "Policy") in June of 2019. Plaintiff specializes in office project management and furniture installation. It conducts the majority of its business at its office in Midtown Manhattan. Defendant agrees to indemnify Plaintiff against specified losses at its office under the "Business Property Coverage" and "Civil Authority Coverage" provisions of the Policy. The Business Property Coverage includes "direct physical loss of or damage to property" and coverage is further extended for losses caused by the action of civil authority. The Policy explicitly excludes coverage for certain specified losses, including those caused by microbes,

which it defines to include viruses (the "Microbe Exclusion").

In March of 2020, due to the rapid spread of the COVID-19 virus and the subsequent executive orders issued by New York Governor Andrew Cuomo mandating that non-essential businesses suspend the presence of their in-person employees (the "Executive Orders"), Plaintiff shut the doors of its Midtown office space. As the pandemic persisted and both the threat of the virus and the Executive Orders remained in place, Plaintiff suffered substantial losses from the loss of use of its office space and ultimately laid off thirty-five employees. Plaintiff sought coverage for its losses, which Defendant denied.

Defendant moves to dismiss the complaint, arguing that the terms of the Business Property Coverage only apply to losses caused by physical damage, and not to loss of use. Defendant also argues that the terms of the Civil Authority Coverage only apply when access to covered property is prohibited, and the Executive Orders were issued in response to direct physical loss or damage located away from the insured's premises. Finally, Defendant argues that the Microbe Exclusion bars coverage for damage caused by the COVID-19 virus. In response to Defendant's arguments, Plaintiff argues that the loss of use of its office space is considered a physical loss, that the Executive Orders unambiguously prohibit access to the office space and nearby properties, and that the Microbe Exclusion is ambiguous and does not apply. Because the Court concludes that the language of the Policy unambiguously does not cover Plaintiff's losses, Defendant's motion to dismiss is GRANTED.

**I. BACKGROUND**

**A. Facts**

**1. The Insurance Policy**

On June 27, 2019, Plaintiff and Defendant entered into an insurance agreement, the terms of which are the subject of this dispute. Dkt. No. 36-1, Decl. of Yahonnes Cleary ("Cleary Decl.") Ex. A (the "Policy"); Dkt. No. 28, Am. Compl. ("AC"), ¶ 11. Plaintiff purchased the Policy from Defendant for the period of June 27, 2019 through June 27, 2020. AC

¶ 10. In accordance with the Policy, Plaintiff agreed to pay Defendant policy premiums in exchange for indemnification for certain losses at its office at 28 West 36th Street, New York, New York 10018. *Id.* ¶ 11.

**\*2** Plaintiff alleges that the Policy is an all-risk policy, providing coverage for all perils unless explicitly excluded or limited in the Policy. *See id.* ¶ 16. Plaintiff asserts that the Policy includes "property, business personal property, business income and extra expense, contamination coverage, and additional coverages." *Id.* ¶ 13. The Business Property Coverage provisions require "direct physical loss of or damage to" the covered property to trigger coverage:

Personal Property Coverage

The Insurer will pay for direct physical loss of or damage to personal property at a location directly caused by a covered peril.

The most the Insurer will pay for any one occurrence for such loss or damage is the applicable Personal Property Coverage Limit of Insurance shown in the Business Property Schedule of Locations at that location ....

Business Income Coverage

The Insurer will pay for the actual loss of business income the Named Insured sustains during the period of restoration due to the necessary suspension or delay of operations caused by direct physical loss of or damage to property at a location directly caused by a covered peril ....

Extra Expense Coverage

The Insurer will pay extra expense caused by direct physical loss of or damage to property at a location directly caused by a covered peril.

Policy at 75 (emphasis omitted).[1] "Extra expense" is defined as

actual reasonable and necessary operating expenses the Named Insured incurs during the period of restoration that would not have been necessary to incur if there had been no direct physical loss of or damage to property, provided such expenses are incurred:

A. to avoid or minimize the suspension or delay of operations and to continue such operations which have been affected by the direct physical loss or damage to the property; or

B. in an attempt to minimize the period of restoration.

*Id.* at 37 (emphasis omitted).

The Policy includes Civil Authority Coverage, which provides coverage for lost business income and extra expense for closures caused when civil authorities prohibit access to the covered property:

For up to the number of days shown on the Business Property Schedule of Coverages and Limits, the Insurer will pay, as provided, for:

i. The actual loss of business income the Named Insured sustains during the period of restoration due to the necessary suspension or delay of operations;

ii. the actual loss of research and development business income the Named Insured sustains during the period of restoration due to the necessary suspension or delay of the research and development projects; and

iii. extra expense,

caused by action of civil authority that prohibits access to the location or reported unspecified location. Such action must result from a civil authority's response to direct physical loss of or damage to property located away from a location or reported unspecified location. That lost or damaged property must be within five miles of that location or reported unspecified location which sustains a business income or research and development business income loss or where extra expense is incurred. The loss or damage must be directly caused by a covered peril.

*Id.* at 82-83 (emphasis omitted). The Policy does not define the terms "direct," "physical," "loss," or "damage."

The Policy also includes an exclusion for "Fungi, Wet Rot, Dry Rot and Microb[e]" (the "Microbe Exclusion") and defines "microbe" to include "any ...

virus," though the term "virus" is not further defined; nor does the policy specifically mention coverage in the event of a pandemic:

> **\*3** The Insurer will not pay for loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or microbes. However, this exclusion does not apply when fungi, wet or dry rot, or microbes results from fire or lightning.

*Id.* at 96 (emphasis omitted).

> Microbes means any:
>
> A. non-fungal microorganism;
>
> B. non-fungal, colony-form organism;
>
> C. virus; or
>
> D. bacteria.
>
> Microbe includes any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of microbes.

*Id.* at 40 (emphasis omitted).

## 2. Plaintiff Shuts its Doors in the Wake of COVID-19

In March of 2020, the COVID-19 virus spread rapidly across New York. The COVID-19 virus is particularly dangerous because it can spread rapidly among even asymptomatic carriers and persist in aerosols for hours and on surfaces for up to 28 days. AC ¶¶ 37, 40-41. By March 11, 2020, the World Health Organization (WHO) declared that the rapid spread of the COVID-19 virus was a pandemic. *Id.* ¶ 39.

To mitigate the unfolding crisis, on March 7, 2020, New York Governor Andrew Cuomo declared a disaster emergency across New York State. *Id.* ¶ 46; Dkt. No. 36-2, Cleary Decl. Ex. B, at 2. On March 12, 2020, Governor Cuomo issued an executive order canceling "[a]ny large gathering or event for which attendance is anticipated to be in excess of five hundred people" and mandating that "[a]ny place of business or public accommodation, and any gathering or event

for which attendance is anticipated to be fewer than five hundred people" operate at no more than fifty percent occupancy. Dkt. No. 36-3, Cleary Decl. Ex. C, at 5. On March 20, 2020, the State of New York issued a stay-at-home order, and Governor Cuomo ordered businesses to "reduce the in-person workforce at any work locations by 100%" and "utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize." Dkt. No. 36-4, Cleary Decl. Ex. D, at 3; AC ¶¶ 48-49.

On March 16, 2020, Plaintiff closed the doors of its office to its customers and ceased its business operations. AC ¶ 55. Prior to the pandemic, Plaintiff's primary source of revenue derived from face-to-face customer interactions at its office space which housed six project managers, a large team of project coordinators, and fifteen field supervisors. *Id.* ¶ 63. As a result of the unexpected and lengthy closure of its office, Plaintiff incurred immense business income losses, which ultimately forced Plaintiff to lay off thirty-five employees. *Id.* ¶ 56.

Pursuant to the Policy, Plaintiff seeks coverage from Defendant for the business income losses incurred by the loss of use of its facility under the Business Income Coverage terms of the Policy. *Id.* ¶ 74. Plaintiff additionally seeks coverage under the Civil Authority Coverage terms for the business income losses incurred by the loss of use of its facility due to the Executive Orders which mandated that Plaintiff close its physical storefront to the public. *Id.*

### B. Procedural History

Plaintiff initiated this case on June 22, 2020, and amended its complaint on November 23, 2020. Dkt. No. 5; AC at 18. Plaintiff brings a single claim for declaratory relief affirming that the losses it incurred during the COVID-19 pandemic are covered under the Policy:

> **\*4** 72. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's office as Civil Authority as defined in the Policy.
>
> 73. Plaintiff further seeks a Declaratory Judgement to affirm that the Orders trigger coverage.

74. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.[2]

AC ¶¶ 72-74. On January 12, 2021, Defendant subsequently moved to dismiss the complaint for Plaintiff's failure to state a claim pursuant to 🔖 Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 34, Mot. to Dismiss Pl.'s Am. Compl. ("Mot."). Plaintiff opposed Defendant's motion on February 9, 2021. Dkt. No. 37, Mem. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n"). Defendant replied on March 2, 2021. Dkt. No. 38, Def.'s Reply Br. Further Supp. Mot. to Dismiss ("Reply").

## II. LEGAL STANDARD

### A. 🔖 Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." 🔖 *Fed. R. Civ. P. 12(b)(6)*. In deciding a motion to dismiss under 🔖 Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See 🔖 Palin v. N.Y. Times Co.,* 940 F.3d 804, 809-10 (2d Cir. 2019) (quoting 🔖 *Elias v. Rolling Stone LLC,* 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of New York Dep't of Fin.,* 620 F.3d 146, 150 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 🔖 *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In addition to the well-pleaded facts in the Amended Complaint, the Court has also considered the Policy, Dkt. No. 36-1, and the Executive Orders, Dkt. Nos. 36-2-36-4. Generally, "[courts] do not look beyond 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.' " *Goel v. Bunge, Ltd.,* 820 F.3d 554, 559 (2d Cir. 2016) (ellipses and citation omitted).

A document is incorporated by reference if "[the party's] action or defense" is based upon it, and "the complaint ... make[s] a clear, definite and substantial reference" to it. *Lynch v. City of New York,* 952 F.3d 67, 79 (2d Cir. 2020) (citations omitted); *BankUnited, N.A. v. Merritt Env't Consulting Corp.,* 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) (quotation omitted). A court can also consider documents that are "integral to" the complaint, provided that the complaint relies heavily upon its terms and effects. *Goel,* 820 F.3d at 559. Here, Plaintiff's claim hinges entirely on the terms of the insurance policy and the Executive Orders, which are written instruments as they are "legal document[s] that define[ ] rights, duties, entitlements, or liabilities[.]" *Lynch,* 952 F.3d at 79. Plaintiff makes numerous clear, definite, and substantial references to the language of the Policy and the Executive Orders throughout its complaint. Accordingly, the Policy and the Executive Orders may properly be considered by the Court at the pleading stage as they are both incorporated by reference and integral to the complaint.

**\*5** Separately, when considering a motion made pursuant to 🔖 Rule 12(b)(6), the Court may take judicial notice of "documents retrieved from official government websites," *see Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015), or other "relevant matters of public record," *see Giraldo v. Kessler,* 694 F.3d 161, 164 (2d Cir. 2012); *see also* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute"). Accordingly, the Court can properly take judicial notice of the Executive Orders in considering Defendant's motion as they are accessible on the State of New York's website. However, as the Court will explain below, its consideration of the Executive Orders is irrelevant because the unambiguous text of the Policy alone does not cover the losses suffered by Plaintiff.

To survive a motion to dismiss pursuant to 🔖 Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S.

at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Although Rule 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**B. Interpretation of Insurance Contracts Under New York Law**

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 98 (2d Cir. 2012). Accordingly, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.,* 472 F.3d 33, 42 (2d Cir. 2006). The "words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks and ellipsis omitted). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc. v. New England Ins. Co.,* 225 F.3d 270, 275 (2d Cir. 2000). However, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir. 1989).

**\*6** "If a court concludes a provision in an insurance contract is ambiguous, it may consider extrinsic evidence to ascertain the parties' intent at the formation of the contract." *Olin,* 704 F.3d at 99 (citation omitted). "If the extrinsic evidence fails to establish the parties' intent, courts may apply other rules of contract interpretation, including New York's rule of *contra proferentem,* according to which ambiguity should be resolved in favor of the insured." *Id.* (citation omitted).

Plaintiffs characterize the Policy as an "all-risk policy," providing coverage for all perils unless explicitly excluded or limited. AC ¶ 16. "All-risk policies ... cover all risks except those that are specifically excluded." *City of Burlington v. Indem. Ins. Co. of N. Am.,* 332 F.3d 38, 47 (2d Cir. 2003). "It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley,* 225 F.3d at 276. Indeed, "labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 751 N.Y.S.2d 4, 6 (App. Div. 2002).

**III. DISCUSSION**

Plaintiff alleges that it is entitled to coverage for the losses it suffered during the pandemic because it suffered physical loss or damage from the novel coronavirus, and the Microbe Exclusion does not apply. Defendant argues that the plain text of the Policy requires that Plaintiff is not entitled to coverage and therefore, Plaintiff's amended complaint must be

dismissed. For the reasons that follow, Defendant's motion is granted.

### A. The Applicable Provisions Unambiguously Require "Physical Loss of or Damage" to Property for Coverage

Defendant's first basis for dismissal is that Plaintiff fails to state a claim under the Business Property Coverage provisions. Dkt. No. 35, Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 11. Each of the applicable provisions in the Policy only applies when the covered property is physically damaged or altered and does not apply to the loss of use Plaintiff suffered. Thus, Plaintiff's request for declaratory relief that "the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property" runs contrary to the clear and unambiguous terms of the Business Property Coverage. AC ¶ 74. The Business Property Coverage grants coverage for losses resulting from "direct physical loss of or damage to" the covered property. Policy at 75. Accordingly, the question is whether the insured premises experienced direct physical loss or damage.

Plaintiff argues against the plain meaning of the phrase, instead insisting that the high risk of the COVID-19 virus created a direct physical loss to the covered property by forcing Plaintiff to close its doors to the public. AC ¶ 32. Despite the fact that its office suffered no physical injury, Plaintiff argues that its loss of use of the office can be characterized as a "physical loss," as its inability to use its office as it had before the pandemic "rendered the property substantially unusable and uninhabitable." *Id.* ¶ 58. However, New York courts have consistently held that the term "direct physical loss or damage" "unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding that loss of use of covered property during a planned power outage in the face of Hurricane Sandy did not constitute "direct physical loss or damage"); *see Roundabout Theatre*, 751 N.Y.S.2d at 8 (finding that the plaintiff was not entitled to coverage where the loss of use of its theatre was not caused by any direct physical damage,

and the policy language "clearly and unambiguously provide[d] coverage only where the insured's property suffer[ed] direct physical damage"); *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 913 (N.Y. Sup. Ct. 2021) ("[C]ourts have declined to interpret [direct physical loss or damage] to include 'loss of use' of the property under New York law.").

**\*7** Critically, Plaintiff's argument also fails to consider the extensive case law that has developed in New York on this exact issue over the past year, which provides that loss of use caused by the COVID-19 pandemic is not physical damage. Unfortunately, Plaintiff is only one of numerous businesses that suffered immense income loss after shutting its doors during the pandemic. Many of those other businesses have brought materially identical actions in New York seeking business impact coverage from their insurance providers. New York courts have consistently maintained that "direct physical loss of or damage" language requires physical damage to invoke coverage, and that loss of use due to the pandemic does not constitute physical damage when the covered property was physically unharmed by the virus. *See, e.g., Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3350 (PGG) (RWL), 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021) (finding that the plaintiff's loss of use of its dental practice during the pandemic closures did not constitute a direct and physical loss, so Plaintiff could not access coverage under the business income coverage clause); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3418 (JGK), 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021) (finding that the plaintiff's loss of use of its catering premises during the pandemic closures did not constitute a direct and physical loss, so Plaintiff was not entitled to coverage); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 CIV. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020), *appeal withdrawn*, No. 21-57, 2021 WL 1408305 (2d Cir. Mar. 23, 2021) (rejecting the plaintiff's argument that the loss of use of its restaurant during the pandemic constituted sufficient physical loss or damage to invoke coverage); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 CIV. 4471 (LGS), 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) (finding that the plaintiff's loss of use of its art gallery and dealership during the pandemic closures did not constitute a direct and physical loss, so the plaintiff was not entitled to coverage); *Visconti,*

142 N.Y.S.3d at 915 (finding that the plaintiff's loss of use of its busing service premises during the pandemic closures did not constitute a direct and physical loss, so Plaintiff could not access coverage under the business income coverage clause) ("The words 'direct' and 'physical' ... require a showing of actual, demonstrable physical harm of some form to the insured premises — the forced closure of the premises for reasons exogenous to the premises themselves is insufficient to trigger coverage.").

As in the many analogous cases that have been brought in New York courts over the past year, the Court concludes here that the plain meaning of "direct physical loss or damage" unambiguously requires physical damage to the covered property to invoke coverage and that loss of usage does not rise to the level of physical damage. Plaintiff has failed to allege such loss or damage occurred, given that Plaintiff's office remained physically intact and unharmed throughout its closure, other than having its doors closed to the public. Accordingly, Plaintiff is not entitled to coverage under the Business Property Coverage terms of the Policy.

**B. The Civil Authority Coverage Unambiguously Requires "Prohibited Access" and "Physical Damage" to Neighboring Properties**

Nor can Plaintiff recover under the Civil Authority Coverage, which only applies when the insured is prohibited from accessing the covered property due to physical damage to neighboring properties. Here too, Plaintiff's position is inconsistent with both the plain terms of the Policy and with the vast majority of recent case law pertaining to identical issues.

The Civil Authority Coverage terms of the Policy apply where "the suspension or delay of operations occurs" and provide that Defendant will indemnify Plaintiff for losses "caused by action of civil authority that prohibit[ ] access[.]" Policy at 83. The provision expressly states that "[s]uch action must result from a civil authority's response to direct physical loss of or damage to property located away" from the location and caused by a "covered peril." *Id.* Defendant argues that the language of the Policy imposes two requirements: that the civil authority action (1) prohibit access to the property, (2) as a result of direct physical damage to neighboring properties. Def.'s Mem. at 19.

In turn, Plaintiff argues that the threat of COVID-19 at neighboring properties constitutes sufficient physical damage, and that the Executive Orders unambiguously prohibited access for the Civil Authority Coverage to apply. Opp'n at 16-19.

Under the clear language of the Policy, in order to be entitled to coverage under the Civil Authority Coverage, Plaintiff must show that Governor Cuomo's orders were issued in response to direct physical loss or damage to neighboring properties. Policy at 82. Here, Plaintiff does not argue that its neighboring properties faced physical damage or loss aside from the potential, speculative infection of the COVID-19 virus, let alone that the Executive Orders were a result of the infection of those properties. As explained above, the loss of use is not sufficient to trigger coverage for physical loss or damage. By failing to plead that neighboring properties suffered any physical loss, Plaintiff has failed to meet its burden to show it is entitled to Civil Authority Coverage under the Policy. This conclusion too, is consistent with the other decisions in this District regarding this issue. *See, e.g., Michael Cetta,* 2020 WL 7321405 (denying the plaintiff coverage under civil authority coverage terms where the plaintiff failed to allege any specific damage to any neighboring properties); *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.,* No. 20 CIV. 5818 (PAE), 2021 WL 276655, at *7 (S.D.N.Y. Jan. 27, 2021) (granting the defendant's motion to dismiss where the plaintiff failed to allege damage to neighboring property); *Food for Thought,* 2021 WL 860345, at *6 (holding that the civil order "would need to be a direct result of a Covered Cause of Loss to property in the immediate area of [the insured] premises" to trigger civil authority coverage) (quotations omitted).

**\*8** Furthermore, in materially identical cases that New York courts evaluated over the course of the past year, the courts have uniformly held that the Executive Orders issued by Governor Cuomo were issued in response to the rapid spread of the COVID-19 virus, and not on account of any physical loss or damage to any specific property. *See, e.g., Sharde Harvey,* 2021 WL 1034259, at *14 (finding that the "orders were the result of the COVID-19 pandemic and ... the COVID-19 pandemic do[es] not constitute a direct physical loss to property"); *10012 Holdings, Ltd.,* 2020 WL 7360252, at *4 (concluding that "Plaintiff

was forced to close for the same reason as its neighbors -- the risk of harm to individuals on its own premises due to the pandemic. Put differently, the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's properties"); *Visconti*, 142 N.Y.S.3d at 917 (determining that that the COVID-19 Executive Orders closed neighboring properties "to limit the risk of spreading the Covid-19 virus. This simply does not implicate Civil Authority coverage."). The Executive Orders at issue here are the same as those at issue in the cited cases. The Court declines to reinterpret the Executive Orders and maintains that they were not the result of any physical damage to specific properties, and so Civil Authority Coverage does not apply.

In addition, Plaintiff has failed to plead that the Executive Orders prohibited access to its office. Policy at 82. The plain language of the Executive Orders limited the presence of in-person employees at the location, but notably did not prohibit access to the premises outright. There is no prohibition that prevents employers from accessing the property for any variety of reasons, such as sorting mail or collecting personal items. Here too, the Court declines to reinterpret the Executive Orders, and instead follows the clear and consistent trend of other New York courts in finding that the Executive Orders did not prohibit access to Plaintiff's property. *See, e.g., Sharde Harvey*, 2021 WL 1034259, at *13 ("[f]ollowing the plain reading of the Civil Authority provision, New York courts have consistently found that the same government shutdown orders at issue here did not 'prohibit' access to premises that would otherwise trigger coverage."); *Food for Thought*, 2021 WL 860345, at *6 ("Food for Thought's allegation that the civil authority orders prohibited access to its 'property for its intended purpose' is not enough to trigger the Civil Authority coverage provision ... [B]ecause no civil authority order denied complete access to the plaintiff's premises, the Amended Complaint fails to allege that access was specifically prohibited.") (quotations omitted); *Michael Cetta*, 2020 WL 7321405, at *12 ("[Plaintiff] has not alleged that access was ever denied completely to the restaurant [and] ... under the plain meaning of the Policy, if employees (but not patrons) were allowed access to the indoor portions of the restaurant, civil authority did not prohibit access.").

Thus, because no civil authority order denied complete access to the plaintiff's premises, Plaintiff is not entitled to coverage.

### C. The Microbe Exclusion Unambiguously Applies to "Viruses" Including the COVID-19 Virus, Barring Plaintiff from Coverage

As Plaintiff has failed to allege that it is entitled to coverage on the face of the Policy, the Court is not required to determine whether the Microbe Exclusion applies. Nonetheless, the Court has considered Plaintiff's arguments and concludes that the Microbe Exclusion unambiguously excludes coverage for damage caused by the COVID-19 virus. Plaintiff argues that the Microbe Exclusion was intended only to apply to "wood/structure damage," and that the COVID-19 virus does not apply because the Microbe Exclusion does not use the word "pandemic." Opp'n at 19-21. No such limitation exists in the plain language of the Policy. The exclusion for damages caused directly or indirectly by "any virus" clearly encompasses the COVID-19 virus even in the absence of the specific term "pandemic." Accordingly, the Microbe Exclusion applies and Plaintiff is not entitled to coverage under the terms of the Policy.

The Policy language provides that "[t]he Insurer will not pay for loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or microbes. However, this exclusion does not apply when fungi, wet or dry rot, or microbes results from fire or lightning." Policy at 96. The Policy expressly defines "microbes" to include "any ... virus." *Id.* at 40. Therefore, substituting "microbes" with the provided definition, the language reads "the Insurer will not pay for loss caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or [virus(es)]."

**\*9** First, Plaintiff does not allege that COVID-19 is not a virus, nor could it. Second, the Microbe Exclusion's causation language is instructive here. Losses "caused *directly or indirectly*" by the virus are expressly within the scope of the exclusion. Plaintiff asserts that "*[d]ue to COVID-19*, Plaintiff has suffered 'direct physical loss of or damage' to its property. Among other things, *COVID-19* made

the Insured Property unusable in the way that it had been used before COVID-19, rendered the property substantially unusable and uninhabitable, intruded upon the property, damaged the property, prevented physical access to and use of the property, and caused a suspension of business operations at the property." AC ¶ 58 (emphasis added); *see also id.* ¶ 64 ("This loss is 'direct.' Plaintiff is not asking Defendant to reimburse it after someone obtained a judgment against Plaintiff for getting them sick. That might be an indirect loss."). Clearly then, it is evident on the face of the Amended Complaint that Plaintiff's losses are excluded from coverage under the Policy. The same is true for any asserted losses caused indirectly by COVID-19, as those are still ultimately attributable to the virus and excluded by the plain text of the Policy. *See id.* ¶ 33 ("Plaintiff's losses were also caused by the entry of Civil Authority Orders, particularly those by Governor Cuomo, New York State, and the New York State Department of Health, to mitigate the spread of COVID-19."). Accordingly, Plaintiff's losses "caused directly or indirectly by or resulting from the presence" or "spread" of COVID-19 are unambiguously excluded from coverage under the Policy.

Plaintiff's arguments are unpersuasive, but the Court will address each in turn. Plaintiff asserts that read as a whole, the Policy clearly shows that the Microbe Exclusion does not apply because it was only "meant to cover any risks related to the wood and/or structure of the property." Opp'n at 20. Plaintiff does not identify any language limiting the exclusion in that way, nor address the effect of the Policy's explicit inclusion of "virus" in the definition of "microbe." Instead, Plaintiff infers that the limitation exists—and that the drafters' intent is evident—because the Microbe Exclusions refers to "wet or dry rot" or "fungi". *Id.* However, because the Microbe Exclusion is not ambiguous, the Court may not look beyond the four corners of the Policy to interpret the Microbe Exclusion's meaning. *See U.S. ex rel. AWL Indus., Inc. v. Site Remediation Servs. Corp.*, 92 F. Supp. 2d 132, 135 (E.D.N.Y. 2000). Plaintiff does not point to any other language within those four corners that would indicate that it could reasonably conclude that the exclusion only applies to wood or structural damage. Plaintiff's assumption that this exclusion only applies to wood and structural damage is just that—an assumption.

Accordingly, the Court rejects Plaintiff's interpretation that the exclusion only applies to wood and structure-related damage.

Plaintiff further argues that the Policy does not expressly mention a pandemic, and so "microbe" is too ambiguous to include viruses that cause global pandemics. Opp'n at 21. The Court disagrees. The Policy expressly defines "microbe" as "*any ... virus.*" Policy at 40 (emphasis added). The language is clear and unambiguous; a reasonable person would understand that, under the plain meaning of "any," that definition encompasses all viruses regardless of whether the virus causes infections on a global scale or causes no infections at all. *See 100 Orchard Street, LLC v. Travelers Indemnity Insurance Co. of Am.*, No. 20-CV-8452 (JMF), 2021 WL 2333244, at *2 (rejecting the plaintiff's argument that a virus exclusion clause did not apply to losses caused by a "national state of disaster like the current pandemic" and explaining that " 'the COVID-19 pandemic is simply a large-scale outbreak of a virus.' " (quoting *Michael J. Redenburg*, 2021 WL 276655, at *8 n.5)). That the word "pandemic" is absent is irrelevant when the word "any" is used, indicating that viruses of all varieties are included. The express language of the Policy indicates that the COVID-19 virus is included under "microbe" as "any ... virus," barring Plaintiff from coverage. There is no language indicating that the COVID-19 virus would be an exception to that principle, regardless of whether or not a pandemic ensued. Indeed, "the fact that [an insurer] could have used *even more* specific language does not [necessarily] render ambiguous the language that [it] actually used[.]" *100 Orchard Street*, 2021 WL 2333244, at *2 (citation omitted) (emphasis in original).

 **\*10** The Microbe Exclusion unambiguously bars Plaintiff from coverage for damage caused directly or indirectly by "any virus," which plainly includes the COVID-19 virus. Had Plaintiff successfully argued that it suffered some direct and physical loss as a result of either the virus or the Executive Orders under the Business Property Coverage and Civil Authority Coverage of the Policy, it still would be barred from seeking coverage due to the Microbe Exclusion.

**IV. AMENDMENT**

In this Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted). The Court declines to grant Plaintiff leave to amend its Amended Complaint *sua sponte* because Plaintiff has previously filed an amended complaint and has not asked for the opportunity to file a second amended complaint, nor has Plaintiff suggested that it is in possession of facts that would cure the problems with its claims. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("[a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that where the "problem with [a complaint] is substantive [and] better pleading will not cure it," leave to amend should be denied as futile).

## V. CONCLUSION

The language of the Policy is unambiguous and bars Plaintiff from coverage. The Business Property Coverage terms of the Policy cover direct physical damage or loss, and the Civil Authority Coverage terms of the Policy cover losses when civil authorities prohibit entrance onto the covered property due to direct physical damage to neighboring properties. Plaintiff has failed to allege that either of those occurred, and instead only alleges loss of use and limited access to the covered property due to the threat of COVID-19. Furthermore, Plaintiff is not entitled to coverage because the Policy's Microbe Exclusion explicitly excludes coverage for damages caused by "any virus," which includes the COVID-19 virus. For those reasons, Defendant's motion to dismiss the amended complaint is GRANTED.

SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 2403088

---

Footnotes

1   Citations to the Policy refer to the page numbers automatically generated by the Court's ECF system.

2   As Defendant notes in its reply brief, although Plaintiff seeks declaratory relief for business income coverage, Plaintiff did not elect Business Income Coverage for the location at issue (Reply at 2); the Policy shows that only Personal Property Coverage and Extra Expense Coverage were purchased for that location. Policy at 71. Nonetheless, Defendant's motion focuses in part on interpreting the Business Income Coverage provisions of the Business Property Coverage terms.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.